PEOPLE v. WHITE.

1. CRIMINAL LAW—TAKING INDECENT LIBERTIES—EVIDENCE—RES
GESTÆ.

In a prosecution for taking indecent liberties with the per-
son of a girl under 14 years of age, evidence of a play-
mate as to what the complaining witness told her a week
after the occurrence of the alleged offense as to respond-
ent's conduct was not admissible as part of the *res gestæ*,
because made too long after the event.

2. SAME—EVIDENCE—HEARSAY,—CORROBORATIVE TESTIMONY — AD-
MISSIBILITY.

Evidence of the fact that she complained was admissible to
corroborate the testimony of the complaining witness, but
the details of her complaint were inadmissible.

3. SAME—COMPLAINT—HEARSAY.

Where the alleged disclosure to her playmate was made
during an argument between them as to whose grand-
father respondent was, and not in the nature of a com-
plaint, it was hearsay and inadmissible.

4. SAME—TRIAL—INSTRUCTIONS—CREDIBILITY OF WITNESS.

It was error for the trial court to instruct the jury that "if
you do not believe respondent's testimony you should not
return a verdict in accordance with it; that as you believe
or disbelieve the respondent you are to return a verdict";
since they might have disbelieved respondent's version of
the affair, but if not convinced by the people's case that
respondent was guilty, it would have been their duty to
return a verdict of "not guilty."

Exceptions before sentence from Grand Traverse;
Mayne, J. Submitted October 16, 1916. (Docket No.
172.) Decided December 21, 1916.

James S. White was convicted of having taken in-
decent liberties with the person of a girl under the
age of fourteen years. Reversed.

*Ward B. Connine,* Prosecuting Attorney, for the people.

*J. J. Tweddle,* for respondent.

BIRD, J.   Respondent was informed against and convicted in the circuit court for Grand Traverse county for having taken indecent and improper liberties with the person of Mildred Skiver, a girl 11 years of age. We are asked to review the proceedings on exceptions before sentence.

The offense was charged to have been committed on July 12, 1915.   At this time respondent was 55 years of age, and was a retail grocery dealer in the city of Grand Traverse.   Mildred lived a block from his store. About noon on the day in question Mildred went to the store to obtain some groceries.   Her story is, in substance, that respondent invited her into the storage room in the rear of the sales room to be weighed, and while there he took indecent liberties with her person. Defendant admits that Mildred was in his store at about that hour of the day in question, and that he weighed her, but at her request.   He denies that he took indecent and improper liberties with her person, and denies any intent of doing so.

1. Ruby Wightman, a playmate of Mildred's, was allowed to testify that Mildred told her what she claimed respondent had done to her.   This is assigned as error on the ground that it was hearsay.   It appears that Mildred, following the occurrence, made no disclosure of respondent's conduct to her parents or to any one else for upwards of a week thereafter.   Mildred then told Ruby, Ruby told her mother, and in this way the story reached Mildred's mother.   Upon being questioned Mildred disclosed to her mother for the first time what she claimed had taken place.

These statements of the complaining witness were not admissible as part of the *res gestæ,* because made

too long after the event. *Lambert* v. *People,* 29 Mich. 71. If they were admissible at all, it was upon the theory that they tended to corroborate the testimony of the complaining witness. Greenleaf on Evidence, § 213. Upon this theory the *fact* that she complained of respondent's conduct was admissible, but the details of her complaint were not admissible. *People* v. *Hicks,* 98 Mich. 86 (56 N. W. 1102). The witness Ruby Wightman testified:

"I remember of Mildred speaking to me about what she claims Mr. White done to her."

So far as the effect upon the jury was concerned, she might as well have detailed what Mildred told her, as Mildred preceded her on the witness stand and informed the jury what her claims were. Speaking of this class of evidence, Greenleaf says:

"Though the prosecutrix may be asked *whether she made complaint of the injury,* and when and to whom, and the person to whom she complained is usually called to prove that fact; yet the particular facts which she stated are not admissible in evidence, except when elicited in cross-examination, or by way of confirming her testimony after it has been impeached. On the direct examination, the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive only a simple 'Yes' or 'No.' Indeed, the complaint constitutes no part of the *res gestæ:* it is only a fact corroborative of the testimony of the complainant; and, where she is not a witness in the case, it is wholly inadmissible." 3 Greenleaf on Evidence, § 213.

Another serious objection to the admission of the testimony is that the statements of Mildred to her playmate, Ruby, were not made as a complaint. The disclosure was made as the result of a dispute between her and Ruby as to which girl's grandpa respondent was. Each girl claimed respondent was her grandpa, and not the other's. The testimony was hearsay, and should have been rejected or stricken out.

2. The trial court, in referring to the testimony of the respondent, instructed the jury, as follows:

"If, however, you do not believe his testimony, then you would not return a verdict in accordance with his testimony. It is as you believe or disbelieve the witness you are to return a verdict."

Exception is taken to this part of the charge. Considering this part of the charge by itself, we do not think it was quite fair to the respondent, because, even though the jury did not believe his version of the affair, still, if they were not convinced by the people's case that respondent was guilty, it would have been their duty to have returned a verdict of "not guilty."

For the errors pointed out, the judgment of conviction must be set aside, and a new trial granted.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.