McCABE, *Administrator of Long, Plaintiff in Error*, v. LEWIS, *Public Administrator*.

1. **Courts**: POWER TO CORRECT THEIR OWN ERRORS: ADMINISTRATION. It is an inherent power in every judicial tribunal to correct an error which it may have committed, when no positive rule of law forbids. Hence, where it was made to appear to the probate court that a pending administration was without authority of law, *Held*, that it was the duty of that court to revoke the authority claimed by the administrator and to stay further proceedings, though there was no express statutory provision authorizing such action.

2. **The Public Administrator.** While the public administrator may in the first instance act on his own judgment in taking charge of an estate, his determination is not conclusive of his authority to do so. The final determination of the question lies with the probate court.

3. ———. The fourth, fifth and sixth subdivisions of section 8 of the chapter on Public Administrators authorizes that officer to take charge only of property which was in his county at the time of the death of the deceased. Wag. Stat., p. 122.

4. ———. An administratrix in Louisiana made final settlement of the estate there and then moved to Missouri. The public administrator here alleging that she had fraudulently converted to her own use a part of the assets of the deceased and had brought them into Missouri, took charge of the estate for the purpose of recovering them. *Held*, that if the allegations were correct the public administrator was not entitled to administer. Her liability was to the creditors and distributees directly.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*E. T. Farish* for plaintiff in error.

The estate was not of that character mentioned or contemplated by the law, which the law authorizes the public administrator to take charge of. Wag. Stat., 122, § 8. It is but a chose in action, a proceeding in equity by which it is sought to recover a judgment against the estate of Catharine O. Long, for conversion of property alleged to have belonged to Maynard. The law never meant to

apply to a case of this kind. It has reference to goods, effects, movables, notes, securities or property of a like character, of strangers or unknown persons without heirs, and which is exposed to loss or damage. Further, if the probate court had ordered the public administrator to take charge of the estate, it would have been improvidently granted, for the contingency referred to in the sixth subdivision of section eight, did not exist. "A court has jurisdiction to grant administration on the estate of a person who died domiciled in another state only when there is personal estate to administer." *Miller v. Jones*, 26 Ala. 247; *Broughton v. Bradley*, 34 Ala. 694; *Railroad Co. v. Swayne*, 26 Ind. 477; *Thumb v. Gresham*, 2 Metc. (Ky.) 306; *Grimes v. Talbert*, 14 Md. 169; *Crosby v. Leavitt*, 4 Allen 410; *Langworthy v. Baker*, 23 Ill. 492; *Ins. Co. v. Lewis*, 97 U. S. 682; *Goodrich v. Pendleton*, 4 John. 549. The public administrator is not the administrator *de bonis non* contemplated by our administration act. Wag. Stat., §§ 46, 47, 48, p. 77. This law clearly has reference to a case when both the first and second administrations are had in and before the same jurisdiction. And as the claim of the public administrator in charge of the estate of Maynard is based upon the idea of a conversion of assets of decedent by the first administratrix, and that he, as successor or administrator *de bonis non*, is entitled to sue for and recover such assets; yet, as the provisions of law above referred to do not embrace such a case, it results that we have no statute law on the subject; and if this be so, the public administrator cannot maintain this action, for it is well settled law that without the aid of special legislative grant of power the administrator *de bonis non* cannot sue the representatives of a former administrator, either at law or in equity for assets wasted or converted by the first executor or administrator, but such suit may be brought directly by creditors or distributees. *Hagthorp v. Hook*, 1 Gill & J. 270; *Coleman v. McMurdo*, 5 Rand. 51

*W. L. Scott* for defendant in error.

The probate court had no jurisdiction to entertain this motion, because no statutory grounds for the same were made to appear; and no authority exists to entertain an application to remove an administrator at the suit of a debtor of the estate, or a stranger to the same. Wag. Stat., 122, § 9; p. 75, § 35; p. 121, §§ 2, 5; p. 806, § 32; p. 123, § 14. The public administrator had authority under sections 8 and 16, article 9, chapter 2, Wagner's Statutes, to take charge of Maynard's estate. The estate consisted of the liability of Mrs. Long for the personal property which had belonged to Maynard, brought by her into this State, and converted to her own use. If this personalty had been here at her death, in kind, it would not be contended that it did not constitute the estate of Maynard in Missouri to be administered. The conversion of it to her own use did not have the effect of destroying Maynard's estate in Missouri; it merely changed its character from property in kind, to a claim for its value. The personal liability of this individual—Catharine Long—was the estate of Maynard, susceptible of administration in Missouri. The *situs* of the assets is where the debtor resides. *In re Partnership of Ames*, 52 Mo. 290; Wag. Stat., p. 84, § 2; p. 87, § 29.

This claim then coming within the definition of "other estate," as used in this section, the remaining question is: Was it left " in a situation exposed to loss or damage, and no other person administers on the same ?" No one had administered on Maynard's estate, although nearly two years had elapsed since Catharine Long had died, and administration of her estate had been entered upon; and about four years had elapsed since she brought the personalty into Missouri and converted it to her own use. The case was clearly one where " no other person administers on the same." It is clear also that the estate " was in a situa-

tion exposed to loss," within the meaning of the statute. Nearly two years had elapsed since Bushell had qualified as executor of Catharine Long's estate; and if the claim of Maynard's estate against it was not "legally exhibited" within two years, it would be "forever barred." Wag. Stat., p. 101, sub. 2, § 1. Inaction for a few weeks longer would have involved the loss of the entire estate in Missouri.

The public administrator legally took charge also by virtue of sub-section 2 of section 8—authorizing him to take charge "when persons die intestate without any known heirs." It is admitted that he died without known heirs, unless Catharine Long was his heir; and the testimony shows that she was not his heir. The most that can be claimed is that she was his widow.

The 5th sub-section of section 8 also authorized the public administrator to take charge. The estate, as already shown, was "liable to be injured, wasted or lost;" and the intestate "left no widow or heir in this State;" that is, when he took charge, there was no widow or heir in this State.

It is claimed for appellant that the public administrator is not the administrator *de bonis non*, contemplated by our administration act. That question is not presented here. The administration on Maynard's estate is the first, or original administration; it stands disconnected from the administration in Louisiana. When Catharine Long brought the personalty into Missouri, it became assets in this State; and her liability was in her individual capacity.

*T. Z. Blakeman* also for defendant in error.

The public administrator had ample authority to take charge of the estate of Maynard, notwithstanding the facts that Maynard resided and died in another state, and that the property sought to be administered on was not brought into Missouri until after his death. Wag. Stat., 122, §§ 8,

13; *Miller v. Jones*, 26 Ala. 247; *McDonald v. Walton*, 2 Mo. 48. There was property of Maynard's unadministered, brought into this State, and it made no difference when administration was begun in this State, whether that identical property remained or had been converted and existed in form of credits. *Stearns v. Wright*, 51 N. H. 600; *Callahan v. Griswold*, 9 Mo. 782.

HENRY, J.—On the 24th day of March, 1873, Henry Gambs, then public administrator of the county of St. Louis, gave notice in writing to the probate court of said county, that he had taken charge of the estate of Wm. J. Maynard, deceased, for the purpose of administering thereon. On the 1st day of May, 1873, he filed an inventory showing that the only assets of said estate was a suit pending in the circuit court of said county, to recover of the executor of Catharine O. Long, deceased, the money and assets of said Maynard, who died in the city of New Orleans, state of Louisiana, in December, 1867. On the 5th day of June, 1871, Isaac Bushell qualified as executor of the last will of said Catharine O. Long, who died in April, 1871, and on the 10th day of March, 1874, he filed a motion in the probate court of St. Louis county to set aside the appointment and revoke the letters of administration granted to said public administrator on Henry Maynard's estate, on the following grounds: 1st, That Maynard's estate had been fully administered. 2nd, Because there were no assets of said estate in said county. 3rd, Because the only purpose of the pretended administration was the prosecuting of vexatious proceedings against the estate of Catharine Long. 4th, Because there are no creditors and no known heirs of said Maynard, except Catharine Long. 5th, Because said administration was useless, vexatious and illegal; the letters improvidently granted; without and contrary to law; and such administration can only serve to sanction vexatious and champertous litigation.

On the hearing, it appeared that a suit was pending in the circuit court against Bushell, as executor of Catharine O. Long, on behalf of said public administrator, to recover assets of the estate of Maynard alleged to have been converted to her own use by said testatrix; that a claim had been filed in the probate court against the estate of Maynard by a creditor of said estate, which originated after the death of Maynard, and after the administration of his estate was closed in the state of Louisiana; that pending the motion in the probate court, Gambs resigned his office and Lewis succeeded him, and the suit in the circuit court and the motion in the probate court were revived, the one in his name and the other against him; that McCabe, on resignation of Bushell, was appointed administrator with the will annexed of Mrs. Long; that Maynard died intestate in the state of Louisiana, of which he was a resident, and Catharine O. Long, who was reputed to be his wife, administered on his estate, and that the administration in that state had been settled and closed; that the property which is the subject of the suit instituted by the public administrator against the executor of C. O. Long, was never in the State until brought here by C. O. Long, who, after she came to Missouri, intermarried with one. Long, and it is not claimed that there is or has ever been any other property of said Maynard's estate in the county of St. Louis.

The motion in the probate court was overruled, and the judgment of that court was successively affirmed by the circuit court and the court of appeals, and the cause is here on appeal from the latter court.

It is contended that there is no statutory provision authorizing the probate court, upon a mere motion, to re-move an administrator, or revoke his letters, for either of the causes above stated. This may be conceded, but it is an inherent power in every judicial tribunal to correct an error which it may have committed when no positive rule of law forbids it.

1. COURTS: power to correct their own errors: administration.

If the probate court had no jurisdiction of the Maynard estate, to say that it could not arrest the administration entered upon by the public administrator, with or without an order of court, would be to compel that court to proceed with the administration, and from term to term, make orders of record therein of no validity or force whatever. If that court should order the public administrator to take charge of an estate, and afterward become satisfied that the estate was not in such condition that the probate court had jurisdiction of it, could it be maintained that the court is powerless to set aside such order, and must continue such administration, thus improperly and illegally assumed?

While the public administrator is, in some respects, independent of the probate court, he is not, with respect 2. THE PUBLIC AD- to proceedings in that court in the adminis-
MINISTRATOR. tration of estates. The court has jurisdiction to determine all questions arising in the progress of the administration, as well its own jurisdiction over the estate, as any other question; and while the public administrator may, in the first instance, act on his own judgment in taking charge of an estate, his determination is by no means final and conclusive of the question of his authority to do so.

The only remaining question of any consequence, is whether on the above facts, the probate court was author-
3. ——.          ized to order the public administrator, or he, without such order, was authorized, to administer on Maynard's estate?

The statute in force when the public administrator took charge of the estate, (§ 8, Wag. Stat., 122,) provides that : "It shall be the duty of the public administrator to take into his charge and custody the estates of all deceased persons in his county in the following instances : 1st, When a stranger dies intestate in the county, without relations. or dies leaving a will, and the executor named is absent, or fails to qualify; 2nd, When persons die intes-

tate without any known heirs; 3rd, When persons un-
known die, or are found dead, in the county; 4th, When
money, property, papers or other estate are left in a situa-
tion exposed to loss or damage, and no other person ad-
ministers on the same. 5th, When any estate of any per-
son who died intestate therein, or elsewhere, is left in the
county, liable to be injured, wasted or lost, when said intes-
tate does not leave a known husband, widow or heir in
this State; 6th, Where, from any good cause said court
shall order him to take possession of any estate to prevent
its being injured, wasted, purloined or lost."

No subdivision of that section can by any reasonable
construction apply to this case. The fourth, fifth and sixth
are the only provisions, which by any possible construc-
tion, can apply, and the whole scope of the section pre-
cludes any interpretation which would authorize adminis-
tration in this case. The introductory clause of the section
restricts the authority of the public administrator to ad-
ministration of estates of deceased persons in his county,
and gives authority only in the cases mentioned in the
succeeding subdivisions, and is a key to the construction
of each of them.

The fifth did not authorize the interference of the
public administrator, because, at his death, Maynard left
no property in St. Louis county. On the public adminis-
trator's theory, the property in controversy was brought
into the county of St. Louis by Mrs. Long, and if the stat-
ute were susceptible of the construction which would
embrace such property, the same rule of construction would
sanction an interpretation which would exempt the prop-
erty from the operation of the statute, because his widow
was in the county; and it may with the same propriety be
said that he left a widow, as that he left property in the
county, for both the widow and the property came into
this State after Maynard's death.

The fourth and sixth subdivisions also evidently relate
to property in the county at the death of the intestate, left

in a situation in which it may be injured or wasted by exposure, or by trespassers, or purloined or lost, and no other person administers.

The property in question came to the hands of Mrs. Long in Louisiana, and her failure in that state to inventory it, if it was the property of the estate, was a breach of duty, and rendered her and her securities liable on her bond, to creditors and heirs. It was her duty to inventory all of the estate of the deceased. Failing to do so, and converting the property to her own use, any creditor or distributee may have his suit against her or her estate, but it is no case for an administration *de bonis non.* To tolerate such proceeding would convert our probate courts into detective tribunals. Any property, temporarily in this State, in the possession of one who having fully administered an estate in another state, had fraudulently appropriated it to his own use, could be seized by the public administrator under the pretense of administering on the estate. Our statute has no such scope, and the administration in another state which has been closed, cannot in this manner, in this State, be re-opened, on the allegation of fraud against the former administrator. There is no necessity for such administration, because the former administrator may be sued here, on such facts as were disclosed in this proceeding, without the intervention of an administrator *de bonis non.*

For the above reasons we are forced to a conclusion different from that reached by the court of appeals, and, therefore, reverse the judgment and remand the cause, with directions that such orders be made on the motion in the probate court as will revoke the authority claimed by the public administrator and stay all further proceedings in the administration of the estate of said Maynard. HOUGH and RAY, JJ., concur; SHERWOOD, C. J., and NORTON, J., dissent.

SHERWOOD, C. J., DISSENTING.—Section 8, article 9,

chapter 2, Wagner's Statutes, page 122, mentions five instances in which it is made the duty of the public administrator to take charge of the estates of deceased persons. These instances are entirely independent of, separate and distinct from, the 6th subdivision of the same section when it becomes his duty to take possession of any estate, when the probate court gives him an express order to that effect. Section 13 of the same article fully confirms this view, since it requires the public administrator immediately upon taking charge of any estate (" except those of which he shall have taken charge under the order of the proper court,") " to file a notice of the fact in the office of the clerk of the court having probate jurisdiction." This section abundantly shows that in the five instances mentioned in section 8, it is the independent duty of the public administrator without any order of the probate court to take charge of a decedent's estate; and that in those instances no order of court is at all necessary. This view of the statute accords also with the case of *Adams v. Larrimore,* 51 Mo. 130, where it is held, when discussing sections 8 and 13, *supra,* that " the statute authorizes the public administrator to act, and confers the jurisdiction independent of the notice. The notice should be filed unquestionably; but it does not give any jurisdiction, authority or power, and its omission will not invalidate the acts of the administrator."

It would seem from a consideration of the case just cited, as well of the sections mentioned, that " jurisdiction " is as fully conferred upon the public administrator, by the five subdivisions of section 8, *supra,* to take charge of an estate, as it is conferred by the 6th subdivision of the same section, on the probate court, to make an order requiring that this be done. And I think the facts in this case warranted the action of the public administrator, at least so far as to make that action *prima facie* correct, in taking charge of the estate of Maynard. And this should be sufficient to prevent the motion in the present case from

20—76

being successful, irrespective of any other consideration, even if it be granted that the probate court has the power to revise the action and to interfere with the discretion which the law in its wisdom has conferred upon and confided to a public administrator, in order that the property of decedents upon which no other person administers, may not be " injured, wasted, purloined or lost." Cases may with ease be instanced where that official has well-founded reasons to believe that property and effects, debts, etc., of a decedent are in such jeopardy as the statute evidently contemplates. True, there may be no tangible property in sight, none that he can lay his hands on; but if he be reasonably satisfied that there is such property, the statute calls upon him to act, and when at the promptings of what he considers his duty, he does act, he does take charge of the estate of a decedent, he being a public officer, the presumption will prevail that his official action is correct. As a matter of course, whether there be any estate of the decedent will often depend upon the outcome of a suit which the public administrator brings, and which section 16 of the article heretofore referred to, requires him to bring, to recover " the property, debts, papers or other estate of the person deceased." Certainly the statute, neither in letter nor spirit, contemplates that a public administrator having taken the steps indicated, should be stopped in mid-career by the mandate of the probate court, before it can be ascertained, as the result of the suit he institutes, whether or not there is any property belonging to the estate of the decedent. Any other construction of the statute would many times make the purloining of the estate an easy matter, and shorten the arm of remedial justice.

Again, we find no provision of the statute authorizing a motion such as the plaintiff has filed, even if we concede that section 9, page 122, of the same chapter, is applicable to public administrators. Section 35, page 75, 1 Wagner's Statutes, provides for revoking the letters of private administrators, but none of the grounds specified in that

section for such revocation, appear in the present motion, nor is that " motion supported by affidavit." And it is settled law that though probate courts possess a certain original jurisdiction as regards matters of administration, yet that jurisdiction can only be exercised in the manner prescribed by the statute. *Powers v. Blakey*, 16 Mo. 437. In every light then in which I regard this case, the judgment which was for the defendant in the probate court, and likewise in the circuit court, and the court of appeals, should be affirmed.

For these reasons I must dissent from the majority opinion. NORTON, J., concurs with me.