State v. Gowdy.

---

THE STATE v. FRED GOWDY, Appellant.

Division Two, March 19, 1925.

1. GRAND JURY: Orally Directed to Return at Subsequent Term. Where the grand jurors who returned the indictment were summoned and acted under the oral order of the court on December 1st, it is unnecessary to decide whether the August grand jury, excused in September until the further order of the court, had a legal existence on December 1st after the commencement of the November term, although all of them so ordered and summoned were the same as the August grand jury except one, who had been excused.

State v. Gowdy.

2. ———: **Oral Order: Entered After Indictment Returned.** On December 1st the judge of the circuit court orally directed the clerk to enter an order for convening a grand jury, and a special *venire facias* was issued, delivered to the sheriff and served the same day, and the jurors thus summoned were sworn and set to work the same day, and on December 10th they returned an indictment against defendant, charging him with a felony. The clerk did not enter the oral order upon his record until December 14th, and as then entered it was in proper form, commanding the sheriff to summon twelve men to appear on December 1st, to serve as grand jurors. *Held*, that, even though it be conceded that an "order" as the word is used in the Constitution (Art. 2, sec. 28) and in the corresponding statute (Sec. 6614, R. S. 1919) means an order entered of record, the indictment was not invalid, although returned before the order was actually entered of record, since the circuit court can have any oral order, made at any time during the term, entered of record as of the date on which it was made, and the case stands as if the order had been entered on December 1st.

3. **RECEIVING STOLEN GOODS: Instructions: Knowledge and Presumption.** An instruction for the State telling the jury that the term "knowing" that the property was stolen means such knowledge and information in the possession of defendant at the time he received the stolen property as would cause him, under the circumstances, to believe and be satisfied that the property was stolen, is not in conflict with another for defendant telling them that they must find beyond a reasonable doubt that, at the time of buying and receiving the hogs, defendant had actual knowledge that they had been stolen, and that the mere naked fact of possession of the hogs by defendant raises no presumption that he knew they were stolen; and said instructions, taken together or separately, required the jury to find that defendant did actually know the hogs were stolen.

Citations to Headnotes: 1, Grand Juries, 28 C. J. 41; 2, Indictments and Informations, 31 C. J. 380; 3, Receiving Stolen Goods, 34 Cyc. 530.

Appeal from Andrew Circuit Court.—*Hon. Guy B. Park,* Judge.

AFFIRMED.

*Shinabargar, Blagg & Ellison* for appellant.

(1) The court erred in overruling the defendant's plea in abatement and motion to quash the indictment,

over the objections and exceptions of the defendant. Section 28, Article 2, Constitution of Missouri, and particularly the provision thereof added by the amendment in 1900 reciting that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies, etc., means that the order for the grand jury must be filed or entered of record before the grand jury is convened and assumes to act. (a) The word "order" means an order entered of record. 15 C. J. sec. 382, p. 971; Medlin v. Platt County, 8 Mo. 235, 40 Am. Dec. 135; Milan v. Pemberton, 12 Mo. 698, 602; Dennison v. County of St. Louis, 33 Mo. 171; Reppy v. Jefferson County, 47 Mo. 69; Maupin v. Franklin County, 67 Mo. 329; Nodaway County v. Williams, 199 S. W. 227; Davidson v. Davidson Real Est. & Inv. Co., 226 Mo. 1, 29; Decker v. Diemer, 229 Mo. 296, 322. (b) The word "order" is similarly defined in our statutes, and generally elsewhere. 6 Words & Phrases, p. 5020; 3 Words & Phrases (Second Series), p. 768; Sec. 1523, R. S. 1919; Sec. 2092, R. S. 1909; Sec. 768, R. S. 1899; Sec. 2208, R. S. 1889; Sec. 3674, R. S. 1879; G. S. 1865, p. 680, sec. 3; R. S. 1855, p. 1278, sec. 3; Secs. 4023-4, 4039, R. S. 1919; Secs. 5229-30, 5245, R. S. 1909; Secs. 2625-26, 2640, R. S. 1899; Secs. 4206-7, 4221, R. S. 1889; Secs. 1906-7, 1921, R. S. 1879. (c) The history of the legislation culminating in the constitutional amendment shows that such was the meaning of the provision. R. S. 1825, p. 466; R. S. 1835, p. 342, secs. 1, 3; R. S. 1845, p. 627, secs. 1, 3; Laws 1851, p. 226; R. S. 1855, p. 910, secs. 2, 4; G. S. 1865, p. 598, secs. 8, 9; Laws 1870, p. 53; Wagner Statutes 1870, p. 798, secs. 8, 9; Laws 1873, p. 46; Laws 1874, p. 97; Laws 1875, p. 78; Laws 1877, p. 279; R. S. 1879, secs. 2776, 2783-6; R. S. 1889, secs. 6059, 6066-71; Laws 1897, p. 141; R. S. 1899, secs. 3761, 3768-73; Laws 1899, p. 392; Laws 1901, p. 192; Laws 1907, p. 320; R. S. 1909, sec. 7266; R. S. 1919, sec. 6614; R. S. 1835, p. 480, sec. 13; R. S. 1845, p. 865, sec. 13; R. S. 1855, p. 1168, sec. 13; G. S. p. 837, sec. 13; Wag. Stat. 1870, p. 1083, sec. 13; R. S. 1879, sec. 1789; R. S. 1889, sec. 4084; R. S.

1899, sec. 2504; R. S. 1909, sec. 5084; R. S. 1919, sec. 3876; R. S. 1835, p. 479, secs. 2, 3; R. S. 1845, p. 863, secs. 2, 3; R. S. 1855, p. 1167, secs. 2, 3; G. S. 1865, p. 836, secs. 2, 3; Wagn. Stat. 1870, p. 1081, secs. 2, 3; R. S. 1879, secs. 1772, 1773; R. S. 1889, secs. 4067-8; R. S. 1899, secs. 2487-88; R. S. 1909, secs. 5067-8; R. S. 1919, secs. 3859-60; Sec. 12, Art. 2, Mo. Constitution; Laws 1899, p. 382; Samuels v. State, 3 Mo. 68, 71; 6 Am. & Eng. Ency. Law (2 Ed.) p. 931. (d) The decisions of this court tacitly concede that the order for the grand jury must be a record order entered before the jury is sworn. Stage v. Bleekley, 18 Mo. 428; State v. Welch, 33 Mo. 33; State v. Connell, 49 Mo. 286; State v. Drogmond, 55 Mo. 87; State v. Hart, 66 Mo. 213; State v. Pate, 67 Mo. 488; State v. Holcomb, 86 Mo. 376; State v. Griffin, 87 Mo. 612; State v. Turlington, 102 Mo. 648, 653; State v. Williamson, 106 Mo. 165, 169; State v. Hudspeth, 150 Mo. 21; State v. Reed, 162 Mo. 312; State v. Warner, 165 Mo. 399; State v. Taylor, 171 Mo. 465; State v. Berry, 179 Mo. 377; State v. Miller, 191 Mo. 587; State v. Crane, 202 Mo. 54; State v. Sartino, 216 Mo. 408; State v. Glasscock, 232 Mo. 278; State v. Connors, 233 Mo. 348. (2) The amendment of 1900 to Section 28, Article 2, Constitution of Missouri, above referred to, is mandatory and not directory. 6 R. C. L. 56, sec. 51; 6 Am. & Eng. Ency. Law (2 Ed.) p. 928; 12 C. J. 740, secs. 145, 146 and p. 731, sec. 109; State v. Kyle, 166 Mo. 302; State v. Skillman, 209 Mo. 408; State v. Campbell, 210 Mo. 226; State v. Warner, 220 Mo. 23; State ex rel. v. Gordon, 223 Mo. 34; State ex rel. v. Hitchcock, 241 Mo. 464; State ex rel. v. Gordon, 251 Mo. 303; State ex rel. Pub. Service Comm., 270 Mo. 429; State ex rel. v. Edwards, 241 S. W. 948; State v. Conner, 86 Tex. 133; 3 Words & Phrases (First Series) 207-8. (3) The omission of the order could not be cured by its subsequent entry, after the indictment had been returned. Burton v. Burton, 288 Mo. 531. (4) The omission of the order from the record was a jurisdictional error. State v. Warner, 165 Mo. 399, 415; 16 C. J. 176, sec. 230. (5) The giving of instruction numbered 11 at the request of

the defendant did not cure the error in Instruction 8 given at the request of the State. 16 C. J. 1054. (6) The court erred in giving Instruction 8 at the request of the State, over the objections and exceptions of the defendant, in that said instruction did not require the jury to find the defendant *did* actually know the hogs were stolen. State v. Ebbeler, 283 Mo. 58; State v. Cavanagh, 225 S. W. 678; State v. Weisman, 225 S. W. 949; State v. Fleischmann, 228 S. W. 461; State v. Henderson, 231 S. W. 596.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

Appellant challenges the array of the grand jury in a plea in abatement filed herein on the alleged ground that the grand jury was not convened upon an order of a judge of a court having the power to try and determine felonies, made in vacation and filed with the clerk of the court or made in term time and spread upon the records of the court, as required by the Constitution and statute. The plea was properly overruled. Article 2, sec. 28, Mo. Constitution; Secs. 3859, 3860, R. S. 1919. (a) The grand jury for the August term, 1921, expired with the lapse of that term of court. State v. Brown, 195 Mo. App. 1. c. 591. (b) The record entries relating to the judge's order for a grand jury were apparently made after the adjournment of the court, but it clearly appears that the grand jurors were summoned by the sheriff in compliance with a *venire facias* issued by the clerk under the seal of the court and that the body of men thus summoned were duly empaneled, sworn and charged, after being summoned and before attempting to discharge their duties as a grand jury. The competency of this organization cannot be challenged. State v. Bleekley, 18 Mo. 429; State v. Connell, 49 Mo. 287; State v. Welch, 33 Mo. 34; State v. Holcomb, 86 Mo. 376; State v. Crane, 202 Mo. 71. (c) The statutory mode of selecting a grand jury is directory only and not mandatory.

Therefore, failure to summon a grand jury in strict compliance with the statute is not reversible error. State v. Knight, 61 Mo. 374; State v. Griffith, 87 Mo. 612; State v. Sartino, 216 Mo. 416. (2) The instructions given correctly declared all the law applicable to the facts in evidence and are sufficient. Sec. 3331, R. S. 1919; State v. Miller, 159 Mo. 118; State v. Glazebrook, 242 S. W. 932.

RAILEY, C.—This is a criminal prosecution under Section 3331, Revised Statutes 1919, by indictment, wherein defendant is charged with having bought and received, in Atchison County, Missouri, on the first day of November, 1921, two hogs, weighing 125 to 150 pounds each, belonging to and stolen from John P. Lynn and James F. Prather, a co-partnership doing business under the firm name and style of Lynn & Prather. The defendant was arraigned, entered a plea of not guilty and, on his application, the case was transferred to Andrew County, where the defendant was tried in the circuit court thereof, and a verdict of guilty returned by the jury, fixing his punishment at imprisonment in the penitentiary for two years. Motions for a new trial and in arrest of judgment were filed, overruled, defendant duly sentenced, and judgment entered in conformity to the verdict of the jury, from which said judgment defendant appealed to this court.

The testimony in behalf of the State tended to prove that defendant, J. F. Gowdy, a farmer living near Tarkio, in Atchison County, bought eleven or twelve hogs in the fall of 1921, from Lee Gowdy, a cousin of defendant, and paid him $105 therefor, on a basis of market price of so much per pound, but without weighing them; that two farmers, John P. Lynn and J. F. Prather, in the fall of 1921, and some time prior thereto, were operating in partnership a large farm, known as Ranch 9, in Atchison County aforesaid, near Tarkio, and owned together, including other kind of stock, something like 150 hogs, of various colors, and weighing approximately about 150 pounds each; that Mr. Mitchell was foreman of said

Ranch 9, had charge of the above hogs, attended to the feeding of same, and counted them every week; that some time prior to November 1, 1921, Mitchell missed six of said hogs, and after considerable search was unable to find them; that one George Keever testified he and Earl Fox went to Ranch 9 one night prior to November 1, 1921, be-tween nine and ten o'clock, in a Buick six touring car, and while there caught and loaded two or three hogs from the Lynn & Prather herd and put them in a field on Ranch 8, on which defendant was then living and while in his charge; that they had no authority to take said hogs; that Earl Fox accompanied George Keever to Ranch 9, on the night aforesaid, and testified that he assisted in taking said hogs, and that the Buick car which they used be-longed to D. A. Gowdy, father of Lee Gowdy; that pre-vious arrangements had been made with defendant about taking hogs to his place, for which defendant was to pay the market price; that some time after the delivery of the above hogs, defendant gave Fox between $80 and $100, which was divided between Fox and Lee Gowdy.

It appears from the testimony of J. W. Hanna, Roy Chastain and W. P. Capper, that they were present and heard defendant asked, at different times and places, if he did not know at the time he got the hogs from Lee Gowdy, Earl Fox and George Keever, that they were stolen, and his reply was, "I had a damn good idea they were."

It appears from the evidence that defendant paid for the hogs, about ninety dollars in cash, and indorsed a check for twenty dollars, instead of paying with a check against the partnership funds of his firm, as was their custom and partnership agreement. Nor was his partner, Mr. Hanna, ever charged with any part of the purchase price of said hogs.

The testimony in behalf of defendant tended to show that his general reputation for honesty and fair dealing and as to his being a law-abiding citizen, up to the time of the above trouble, was good.

The defendant, a young man thirty years of age, tes-tified, in substance, that he was spending Saturday night

and Sunday, about September 1, 1921, with his father in Tarkio, when he was hailed by his cousin, Lee Gowdy, who asked him if he wanted to buy some stock hogs.; that he answered in the affirmative; that Lee Gowdy asked him what he would pay, and defendant told him the market price, which was then about eight and a half or nine cents per pound; that Lee Gowdy agreed to deliver the hogs at defendant's place, and did deliver the same about the middle of September, 1921, while defendant was at St. Joseph; that defendant looked the hogs over on Saturday following their delivery; that Lee came to defendant's farm on the following Monday and they "dollared" the price off on the hogs on a basis of about 100 to 110 pounds each at $9 per head, which amounted to $105 for the bunch; that he endorsed a $20 check to Lee, and paid the balance in cash, afterwards, to Earl Fox, in Tarkio, and directed Fox to give it to Lee, but did not think he said at the time of doing so, "Here is your damn money." The defendant denied saying at any time, or at any place, that "I had a damn good idea they were stolen."

The defendant, during the progress of the case in the trial court, filed a plea in abatement and a motion to quash the indictment, both of which were overruled.

The plea in abatement, motion to quash the indictment, the instructions and rulings of the court will be considered, as far as necessary, in the opinion.

I. * It is contended by appellant, that the trial court erred in overruling his plea in abatement and motion to quash the indictment.

The evidence of appellant in support of said plea and motion to quash, indicates that at the August term, 1921, of the Atchison Circuit Court, before whom this cause was then pending, there was caused to be duly impaneled in said court, a grand jury; that afterwards on the last day of said August term, 1921, being the 6th day of September, 1921, the Atchison Circuit Court entered in said cause in reference to said grand jurors, the following order: "They are there-

Grand Jury.

upon excused by the court until the further order of the court.'' The next term of the Atchison Circuit Court began on November 28, 1921. On December 1, 1921, the members of said August grand jury—except Mr. Marshall, who had been excused—reported to the court for further grand jury service. Mr. Marshall's place was filed by Mr. L. H. Luckhardt. As the grand jury was about to begin its work, one of the special prosecutors raised the question as to the right of said grand jury to proceed with its work at the November term, 1921, of said court. Thereupon the judge of the Atchison Circuit Court, while the latter was in session, on said December 1, 1921, orally directed the clerk of said court to enter orders for the convening of a new grand jury, and changing the record of the August term, so as to make it show that the grand jury had been discharged as to the August term, 1921. A special *venire facias* was thereupon issued, and delivered to the sheriff of said county, on December 1, 1921. It was served on said day and the grand jurors thus summoned, were sworn and set to work on the same day.

Although, as above stated, the judge in open court, orally directed said clerk to enter the above-mentioned orders on the court records on December 1, 1921, the clerk did not do so on said date, and the court record remained silent as to said orders until about the 14th day of December, 1921, when the clerk discovered he had failed to enter said orders of record, and thereupon on or about said date, entered in the court record the following:

''It appearing to the court that the further services of a grand jury is needed at this term of court, it is ordered that the clerk of this court issue a venire to the sheriff of this county, commanding the sheriff to summons twelve good and lawful men, drawn from the body of Atchison County, to appear at the court house, in the city of Rockport, at nine o'clock, Thursday, December 1, 1921, to serve as grand jurors.''

The indictment herein, was returned on December 10, 1921, a warrant was issued for the arrest of defendant

on the same day, and served on appellant December 26, 1921. On February 14, 1923, defendant filed in the Andrew Circuit Court the plea in abatement and motion to quash said indictment above mentioned, which were overruled on February 19, 1923, and the trial commenced before a jury.

It is insisted by appellant that the grand jury selected at the August term had no legal existence as such, on the 1st day of December, 1921, after the commencement of the November term, 1921. We are cited to the case of State v. Brown, 195 Mo. App. 590-1-2, 194 S. W. 1069, in support of this contention.

It is unnecessary, in view of the record aforesaid, to consider this question, as the grand jurors who returned the above indictment were summoned and acted under the oral orders of the court aforesaid, calling for a special venire to appear on December 1, 1921, during the November term, 1921, of said court.

II. It is claimed by appellant, that the grand jury selected on the 1st day of December, 1921, during the November term of said court, had no legal existence and that all of its proceedings in respect to the above indictment are *coram non judice and void*. It is insisted that Section 28 of Article II of our present Constitution, as interpreted by Section 6614, Revised Statutes 1919, means that the order convening a grand jury must be entered of record before the grand jury is convened and assumes to act.

*Order for Grand Jury: Entered After Indictment.*

Section 28 of Article II of our Constitution reads as follows: "The right of trial by jury, as heretofore enjoyed, shall remain inviolate; . . . Hereafter, a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or a true bill; *Provided, however*, that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies; but when so assembled such grand jury shall have power to investigate and return indictments for all character and grades of crime."

Section 6614, Revised Statutes 1919, provides for the carrying into effect the provisions of Section 28 of Article II supra, in respect to the convening of grand juries, etc.

Appellant contends that the word "order" used in Section 28 of Article two means an order entered of record, and that all orders not thus entered are void. We are cited by appellant to an array of authorities in this State, which hold, in legal effect, that the acts and proceedings of the circuit court could only be shown by its record, under the circumstances detailed in said respective cases.

Giving to appellant the benefit of his contentions, in respect to above matter, can it be said, that the convening of the grand jury in this case was void? It is elementary law in this State that our circuit courts exercise common-law jurisdiction, and are vested by Section 3 of Article 4 of our Constitution with general supervision over all inferior courts. It is likewise true that during the term of the circuit court in which proceedings are had, they are within the breast of the court and can be corrected or set aside by the court during such term, on its own motion. The circuit court, during said term, can cause to be entered of record, any oral order relating to the business of said court, make during said term, as of date on which said oral order was made. In other words, the oral order for a grand jury made by the court at the November term, 1921, remained in the breast of the court during said term, and was properly entered on the court record by the clerk, on December 14, 1921, as of date, December 1, 1921, when said oral order was made. The case, therefore stands as if the circuit clerk, on December 1, 1921, had entered of record the order for the grand jury which returned the indictment in this case. [Rottmann v. Schmucker, 94 Mo. l. c. 144; Scott v. Smith, 133 Mo. l. c. 621-3; Aull v. St. Louis Trust Co., 149 Mo. l. c. 13-14 and cases cited; Ewart v. Peniston, 233 Mo. 695; Craton v. Huntzinger, 187 S. W. (Mo.) l. c. 53; Shuck v. Lawton, 249 Mo. l. c. 173.]

In Aull v. St. L. T. Co., 149 Mo. l. c. 14, Judge Bur-
gess, in considering this subject, very clearly and cor-
rectly states the established law of this State as follows:

"In speaking of the power of these courts over their
judgments in Rottmann v. Schmucker, 94 Mo. loc. cit. 144,
it is said: 'That a court of general jurisdiction, pro-
ceeding according to the course of the common law, has
unlimited power during the whole of the term over its
judgments rendered at such term, is a rule of universal
application. [Freeman on Judgments, sec. 90.] Until
the end of the term its judgments are in the breast of the
court, and may be modified, vacated, or set aside, as jus-
tice demands, becoming absolute only upon the adjourn-
ment of the court for that term, and no good reason is
perceived why the same rule should not apply to those
judgments of the probate court, whose verity is as un-
questionable after they become absolute as those of the
circuit court—citing Caldwell v. Lockridge, 9 Mo. 362;
Price v. Johnson Co., 15 Mo. 433; State ex rel. v. Treas-
urer of Callaway Co., 43 Mo. 228; Bartling v. Jamison,
44 Mo. 141; McCabe v. Lewis, 76 Mo. 296.''

The above quotation is fully sustained by the other
authorities just cited, as well as by numerous opinions of
our courts of appeals.

In view of the foregoing, we are of the opinion, that
the trial court committed no error in overruling appel-
lant's plea in abatement and motion to quash the indict-
ment.

III.   Appellant charges that: "The court erred in
giving instruction numbered 8, at the request of the
State, over the objections and exceptions of the defend-
ant, in that said instruction did not require the jury to
find the defendant did actually know the hogs were
stolen."

Said Instruction 8 and the one numbered 11, given
at the instance of defendant, read as follows:

"8.   By the term 'knowing' that the property was
stolen, as used in these instructions, means such knowl-
edge and information, if any, in the possession of the de-

fendant at the time he received the stolen property, if you find and believe he did receive the stolen property, as would cause defendant, under the circumstances which you believe defendant received the property, if you find he did, to believe and be satisfied that the property had been stolen.

"11. The court instructs the jury that before you can find the defendant guilty, you must find from the evidence beyond reasonable doubt that at the time of buying and receiving the two Lynn & Prather hogs mentioned in the evidence, if you find he did so buy and receive them, he had actual knowledge that they had been stolen; and, in this connection, you are further instructed that the mere naked fact of the possession of said hogs by the defendant raises no presumption that the defend-. ant knew said hogs had been stolen."

These instructions are not in conflict with each other, and properly declared the law.

The case of State v. Ebbeler, 283 Mo. l. c. 59, and following, cited by defendant, does not condemn the instruction complained of, nor is its correctness challenged by any of the other cases cited by appellant. The instruction in the Ebbeler case complained of was numbered 2, and read as follows:

"By the term 'knowing' that the property was stolen is not meant absolute personal and certain knowledge on the part of the defendant that the property mentioned in the indictment had been stolen, but such knowledge and information in his possession at the time he received the same, if you believe he did receive it, as would put a reasonably prudent man, exercising ordinary caution, on his guard and would cause such a man exercising such caution, and under circumstances which you believe defendant received the property, to believe and be satisfied that the property had been stolen.

"The mere naked fact of the possession of said property by the defendant raises no presumption that the defendant knew that said property had been stolen by another."

The most casual reading of said Instruction 8, in connection with the authorities cited by appellant, will indicate that it does not contain the language criticised in said cases. No jury could be misled by said instruc-, tions numbered 8 and 11, whether considered separately, or in conjunction with each other. They both refer to actual knowledge on the part of appellant, that the property was stolen, and neither authorizes a conviction, on what a reasonably prudent man, other than defendant, would have done under the circumstances of the case. The above assignment is accordingly overruled.

IV. We have carefully read, and fully considered, the evidence, instructions and rulings of the court, as shown in the transcript and the respective briefs of counsel. We are of the opinion that there was substantial evidence offered at the trial to sustain the conviction; that the instructions given by the court fairly and properly presented the law of the case to the jury; that no adverse rulings were made of which defendant can legally complain, and that the appellant has had a fair and impartial trial before an unprejudiced jury. The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.