THE STATE v. WILLIAM DAY, Appellant,—95 S. W. (2d) 1183.

Division Two, June 30, 1936.

*Dearmont, Spradling & Dalton* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

TIPTON, P. J.—An information was filed in the Circuit Court of Cape Girardeau County, Missouri, charging the appellant with having knowingly received stolen property. On a change of venue, the cause was sent to the Circuit Court of Mississippi County. A trial in that county resulted in a verdict of guilty and the appellant was sentenced to two years' imprisonment in the State penitentiary.

On the night of February 23, 1935, the Vandeven Mercantile Company's store was burglarized by two negroes, David Lee Robinson and W. T. Cooper, who stole a quantity of cigarettes. There is no dispute concerning the burglary or that the cigarettes in question were stolen.

The next morning, which was Sunday, Robinson went to the appellant's store and there offered to sell the cigarettes for $50, which offer was accepted by the appellant. Later in the day Robinson and Cooper brought the cigarettes obtained in the burglary in a sack to the store of the appellant. At the time the negroes came in witness Brunke was in the store. They were suspicious of Brunke, but were informed by the appellant that he was all right. After an examina-

tion of the cigarettes the appellant told the negroes that all he would pay for the cigarettes was $40, which proposition the negroes accepted. Both of the negroes and Brunke testified that at the time the negroes came into the store the appellant asked if that was the "corn" to which they replied "yes" and he also told them if they ever had any more to come back. At the same time he told the negroes and Brunke to say nothing about the transaction.

The appellant began to sell the cigarettes for $1 per carton which was under the standard price charged for cigarettes. He told the officers who investigated the burglary of the Vandevens' store that he was selling the cigarettes at that price as an advertising proposition. He claimed he bought the cigarettes from a local wholesale house, but later changed his story and stated that this shipment of cigarettes was what was known as a drop-shipment and he was using it for the purpose of stimulating business. After the appellant's son had told the officers that the appellant purchased the cigarettes from the two negroes, the appellant admitted this to be true.

Brunke testified that immediately before the cigarettes were purchased the appellant told him that he had an opportunity to purchase some "hot" cigarettes and appellant asked Brunke advice on the matter. He also testified that he was present when the cigarettes were purchased; that the negroes came in the store through the rear or side door and that the other doors were locked.

The appellant took the stand and for his defense denied that he knew at the time he purchased the cigarettes that they were stolen. He admitted buying the cigarettes from the negroes and selling them at the reduced price. Other pertinent facts will be stated in the course of this opinion.

I. The appellant contends that the court erred in submitting the cause to the jury because there was insufficient evidence to show his knowledge that the cigarettes were stolen. It is not disputed that the goods were stolen. We are of the opinion that the evidence is sufficient to show that the appellant knew that the goods he purchased were stolen. Witness Brunke testified that immediately before the appellant purchased the goods he asked Brunke's opinion as to whether he should purchase some "hot" cigarettes. He bought the cigarettes from two negroes unknown to him on a Sunday morning at a price far below the wholesale price, and when questioned by the officers about the purchase, the appellant told three different stories as to how he came in possession of the goods. This is sufficient evidence to sustain the verdict of the jury. [State v. Woodall, 300 S. W. 712; State v. Hicks, 64 S. W. (2d) 287; State v. Spires, 65 S. W. (2d) 1057.]

II.   The appellant assigns as error the refusal of the court to permit him to impeach the witness Brunke, by independent evidence to show his interest, bias and prejudice toward the appellant.

On cross-examination Brunke testified that he never had any bad feeling toward the appellant. He stated that he had been employed by appellant's sons-in-law who did not speak to the appellant but stated that he did not know whether he shared their feelings but that if he did he did not know it. He denied that he had been discharged by the appellant for refusing to help carry a piano upstairs. He denied that he had not spoken to the appellant between March and September, 1932. He did not remember whether or not he had told appellant's daughter that appellant was a dirty crook. He stated he did not remember whether he did or not; that he might and he might not. He admitted that the appellant came over to the filling station and took out a desk and chair from the station. When asked whether or not he called the appellant certain vile names and threatened to assault him if the appellant came into the station, he stated, "I don't know whether I said that or not, I don't remember; I don't believe I did." He did not recall whether or not he made the same statements to appellant's daughter, Mrs. Schwach. Witness denied that he had told appellant's son he had lied about appellant to keep himself out of trouble. He did not remember whether he had had a conversation with appellant's son or not. He did not recall whether or not he had advised appellant's son that he would get even with appellant. He denied that he had undertaken to get appellant's wife to leave him or had encouraged her to leave him. Witness denied that he had threatened to stamp the guts out of appellant if he undertook to move a toilet from the premises. He claimed he merely told appellant not to move it and made no threats. He denied any ill will toward appellant.

The appellant tried to show by witnesses, Hazel Wulfers, Mrs. Albert Schach, Laura Day and others that the witness had made statements that would show he was biased and prejudiced toward the appellant, but the trial court excluded this testimony on the ground that it was a collateral matter and the appellant was bound by the answers of the witness.

This was prejudicial error. A party who interrogates a witness on cross-examination as to bias and prejudice is not bound by his answer but may contradict him by other evidence. Where a witness claims he has no *animus* for the party to the litigation, the existence and real extent of his hostility and venom may be shown by independent evidence. Great latitude should be allowed to show the influence working on the witness including the relationship of the witness to the parties involved in the litigation. Facts which tend to discredit the witness or to lessen the value of his testimony are ma-

terial and not collateral. [State v. Downs, 91 Mo. 19, 3 S. W. 219; State v. Jones, 106 Mo. 302, 17 S. W. 366; State v. Mulhall, 199 Mo. 202, 97 S. W. 583; State v. Pruett, 144 Mo. 92, 45 S. W. 1114; State v. Horton, 247 Mo. 657, 153 S. W. 1051; Bond v. Frisco Railway Co., 288 S. W. 777, 315 Mo. 987.]

In Rogers v. St. Avit, 60 S. W. (2d) 698, the St. Louis Court of Appeals said:

"It is a well-established rule that upon the trial of the issues in a cause the jurymen are entitled to know everything that affects the credibility of the witnesses and the weight to be given to their testimony, including not only their own interests in the parties who are to profit or lose by the verdict. This goes not only to their contractual relations, but also to their friendships and enmities. In other words, the jurymen are entitled to know the interests and prejudices of the witnesses, with respect to the issues on trial, their relations to the parties, and the state of their feelings towards the parties."

It is suggested by the State, that the proper foundation was not laid to permit the appellant to ask the witnesses the excluded questions. To this suggestion we do not agree. Witness Brunke denied that "he had any ill will against" the appellant, he also denied that he had any feeling against the appellant. This alone would be a sufficient foundation.

In the case of MaGill v. Boatmen's Bank, 250 S. W. 41, l. c. 43, we said:

"The appellant argues that the plaintiff was attempting to show ill will on the part of the witness Connett, and that no foundation was laid for it. A foundation was laid for it. The record shows that Connett was asked if he did not have a feeling of ill will toward Mrs. MaGill and her husband. He denied it; and in such case it was proper to show by appropriate questions that he had. [State v. Horton, 247 Mo. l. c. 665, 153 S. W. 1051; State v. Hyder, 258 Mo. l. c. 232, 167 S. W. 524; State v. Pruett, 144 Mo. l. c. 94, 45 S. W. 1114.] In the Horton Case a passage from Cyc. is quoted to the effect that circumstances which tend to show motive or bias of any witness who has testified are admissible."

We hold that the failure of the court to permit the appellant to show the bias and ill feeling that the witness Brunke held toward the appellant constitutes reversible error.

III. The appellant makes many complaints of the giving of instructions on behalf of the State and the refusal of the court to give instructions requested by him. Inasmuch as this cause must be retried, we will not lengthen this opinion by taking up each assignment separately.

On retrial of this case, the court should give the instructions that would require the jury to find (1) that the cigarettes were stolen and (2) that the accused received them knowing at the time that they had been stolen before the jury would be authorized to return a verdict of guilty. [State v. Spires, 65 S. W. (2d) 1057.] The jury must find that the accused had actual knowledge at the time he received the cigarettes that they were stolen as distinguished from finding that he negligently failed to ascertain if they were stolen. Of course, this fact can be proved by circumstantial evidence, as well as direct evidence. [State v. Fleischmann, 228 S. W. 461; State v. Ehrenberg, 234 S. W. 829; State v. Gowdy, 270 S. W. 310, 307 Mo. 352; State v. Park, 16 S. W. (2d) 30, 322 Mo. 69.]

If the appellant formulates and offers an instruction that tells the jury that mere possession of stolen property raises no presumption that he knew they were stolen, it should be given. [State v. Park, supra; State v. Lippman, 222 S. W. 436.] It goes without saying that the instructions should require the jury to find the accused guilty beyond a reasonable doubt.

It is not nceessary for the court to give an instruction, if the subject matter of that instruction is already covered by another instruction. [State v. Williams, 337 Mo. 884, 87 S. W. (2d) 175.] However, if the appellant formulates and offers an instruction that is the converse of an instruction given on behalf of the State that directs a verdict, it should be given. [State v. Ledbetter, 332 Mo. 225, 58 S. W. (2d) 453.]

For the error in refusing to admit evidence tending to show the bias and ill feeling that the witness Brunke held toward the appellant, the judgment should be reversed and the cause remanded for a new trial. It is so ordered. All concur.