THE PEOPLE v. BENJAMIN H. HICKS.[1]

*Criminal law—Indecent liberties with person of female child— Evidence.*

1. A respondent charged under 3 How. Stat. § 9314*b*, with having taken indecent and improper liberties with the person of a female child under the age of 14 years, need not be shown to have taken liberties with the private parts of the child to warrant his conviction.

2. The term "indecent and improper liberties with the person of such child," as used in 3 How. Stat. § 9314*b*, means such liberties as the common sense of society would regard as indecent and improper; citing *State v. Millard*, 18 Vt. 577.

3. While it would doubtless be competent to show by the mother her daughter's entrance into the house, and her appearance at the time, and whether or not at that time she made any complaint of her ill treatment by the respondent, it is error to permit her to detail the conversation had with her daughter regarding the alleged offense.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued November 2, 1893. Decided December 8, 1893.

Respondent was convicted of a violation of 3 How. Stat. § 9314*b*, and sentenced to imprisonment in the State prison

---

[1] Respondent was again convicted on his new trial.

for, eight years. Judgment reversed, and a new trial granted. The facts are stated in the opinion.

*Myron H. Walker,* for respondent.

*A. A. Ellis,* Attorney General, and *Alfred Wolcott,* Prosecuting Attorney, for the people.

LONG, J. Respondent was convicted on an information charging him with having made an assault on one Elsie Hoertz, a female child of the age of eight years, and taking indecent and improper liberties with her person.

The prosecution was brought under section 9314*b*, 3 How. Stat., which provides:

"If any male person or persons over the age of 14 years shall assault a female child under the age of 14 years, and shall take indecent and improper liberties with the person of such child, without committing or intending to commit the crime of .rape upon such child, he shall be deemed a felonious assaulter, and on conviction thereof shall be punished by imprisonment in the State prison not more than 10 years, or by fine not exceeding $1,000, or both such fine and imprisonment, in the discretion of the court."

The respondent was a man 62 years of age. On the day in question, he went to the rear of the house of the child's father, ostensibly to see him, but was told by the mother that her husband was not at home, but would return in about 20 minutes. Back of the house was a shed, in which was the child cracking some nuts. The respondent entered the shed, and what took place there is in dispute between the respondent and the child. It becomes necessary to state the claims of the parties, in view of the charge of the court.

The child says that when he entered the shed he said: "What pretty legs you have got." She said: "Can't you see my legs there?" He then put his hand under her clothes,—as she expresses it, "under my pants," illustrating where he put his hand by putting her hand to her side. She told him she would tell her mother, and at once went.

into the house. The mother of the girl was called as a witness. She stated that her daughter came in, and told her that the man picked up her dress, and reached way up under her clothing, to her private parts. The witness was permitted, under objection, to detail the whole conversation with her daughter.

The respondent testified in his own behalf that he found the girl cracking nuts; that she was sitting on a block; that he bent down on one knee in front of her, and took the hammer and cracked some; that he got to fooling with her about them, taking some from her; that she commenced to crack one, and he was going to get it, or reached to get it, when she, sitting straddle of the block, put up her knee to hold him off, and that he took hold of her leg, and moved it away, to get the nut; that he put his hands upon her in no other way. She said she would tell her ma, and went into the house. He left immediately after that, and did not wait to see her father.

The general rule excludes all hearsay testimony, but there are cases when the exclamations and statements of the injured party are made so near upon the point of time when the injury is inflicted that such exclamations and statements are admissible as a part of the *rés gestae*. Such was the case in *Lambert v. People*, 29 Mich. 71. In cases of rape, however, the rule is somewhat extended, and is given by Greenleaf as follows:

"Though the prosecutrix may be asked whether she made complaint of the injury, and when and to whom, and the person to whom she complained is usually called to prove that fact, yet the particular facts which she stated are not admissible in evidence, except when elicited in cross-examination, or by way of confirming her testimony after it has been impeached. On the direct examination, the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and receive only a simple yes or no. Indeed, the complaint constitutes no part of the *res gestae*; it is

only a fact corroborative of the testimony of the complainant, and where she is not a witness in the case it is wholly inadmissible." 3 Greenl. Ev. § 213.

But exceptional cases have arisen, when rape was charged, where third parties have been allowed to detail conversations with the prosecutrix. In *People v. Gage*, 62 Mich. 271, this was allowed. It was not permitted upon the ground that the complaint of the prosecutrix was a part of the *res gestae*, but as corroborative of her testimony, and for the reason that the party outraged was of tender years, and that her silence for a length of time was the direct consequence of fears of chastisement, induced by threats of the perpetrator of the wrong. This case goes to the extreme of the rule, and borders closely upon dangerous ground.

In the present case, however, no charge of rape, or assault with intent to commit that offense, is made. No violence was used, and, if the testimony of the respondent is believed, no offense was committed. If the testimony of the girl is believed, it is doubtful if the jury would have convicted of any greater offense than assault and battery, while the testimony of the mother as to what the girl told her might lead the jury to believe that the respondent was guilty of the offense with which he was charged. They might have regarded it as being received, not as corroborative of the testimony of the girl, but as proof of the offense. The court erred in permitting the mother to detail the conversation with her daughter. Doubtless, it would have been competent to show by the mother the daughter's entrance into the house, and her appearance at the time, and whether or not at that time she made any complaint of her treatment by the respondent, but the rule would not permit the prosecution to go further. If such rule as the prosecution contends for be recognized, then in every case of assault and battery it should be applied, and the

prosecutor would be permitted to make corroborative evidence upon his own statement to a third party, and of which rule evilly-disposed persons would be likely to take advantage.

It is contended by respondent's counsel that, to constitute the offense under this statute, the respondent must be shown to have taken liberties with the private parts of the child. We do not think the act susceptible of that construction. The Legislature evidently did not intend so to limit its meaning. The offense is in taking indecent and improper liberties with the person of such child. Surely, the Legislature did not intend that the offense should not be regarded as committed unless the indecent liberties were taken with the private parts of the child. It certainly would be indecent for a man to place his hands upon certain other parts of the body of a female child, with intent to take liberties with her. "Indecent and improper liberties with the person of such child" means such liberties as the common sense of society would regard as indecent and improper. In this case, as in *State v Millard*, 18 Vt. 577, it may be said that "no particular definition is given by the statute of what constitutes this crime. The indelicacy of the subject forbids it, and does not require of the court to state what particular conduct will constitute the offense. The common sense of the community, as well as the sense of decency, propriety, and morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it." The prosecution in that case was for indecent exposure of the person.

We think there was manifest error in the charge. The court stated what took place between the parties in the shed up to the time when the respondent said he attempted to take the nut from the child, and added, "So far they

both agree." The parties did not agree up to that point. On the contrary, the respondent positively denied that he put his hands upon the girl, or that he had any intent to commit any indecency. If his story be true, he was without fault, and could not have been convicted of an assault even; while, if the story of the girl be true, he was addressing indecent language to her from the outset, and had committed an offense against her.' The way the case was left to the jury under this charge could not but have prejudiced his case.

The theory of the defense was not stated to the jury in the general charge. The jury should have been told that, if they believed the respondent's testimony, it was their duty to acquit. We think the charge unfair in this respect.

The verdict and judgment must be set aside, and a new trial ordered.

McGRATH, GRANT, and MONTGOMERY, JJ., concurred with LONG, J.. HOOKER, O. J., concurred in the result.