# THE STATE v. I. M. HORTON, Appellant.

**Division Two, February 19, 1913.**

1. **APPEAL: Review of Instructions.** Unless appellant's motion for a new trial complains of the court's instruction on the subject of *alibi*, the alleged error in giving it will not be reviewed on appeal.

2. **PHYSICAL EXAMINATION OF DEFENDANT: Consent: Self-Incrimination: No Objection.** The testimony of physicians who testified that, after defendant's arrest, charged with statutory rape upon an eleven-year-old girl, they made a physical examination of defendant's person at the request of the police captain, and found him afflicted with a venereal disease, his only "consent" consisting of a failure to object to the physical examination, is incompetent, if properly objected to, as an invasion of his constitutional right not to be compelled to testify against himself; but where his only objection to the testimony was that the physical examination took place after the preliminary examination before the committing magistrate, the admission of the incompetent testimony did not constitute reversible error, since the objection was not sufficient to call the trial court's attention to its incompetency.

3. **EVIDENCE: Threats of Mother of Prosecutrix: Competent.** The defendant charged with statutory rape is entitled to show that the mother of prosecutrix, called as a witness by the State, had made threats against him before the alleged assault; and where, on cross-examination, she denies having made any such threats and denies having engaged in a certain quarrel with him, he is entitled to call witnesses to show she did make such threats and did engage in said quarrel. Having laid the proper foundation, he is entitled to present such testimony to show the bias, malice, ill-will and prejudice of the witness, whoever is the prosecutrix; but such testimony is especially pertinent and fair where the prosecutrix is an eleven-year-old girl, and is in the control and custody of a witness who is the real prosecutor or prosecutrix, in a case where the charge is sometimes the result of ulterior motives.

4. **CARNAL KNOWLEDGE, ETC.: Necessity for Fairness and Caution.** The frequency of verdicts of guilty in cases of rape, carnal knowledge, incest and seduction upon evidence not strong enough to secure convictions in other criminal prosecu-

247 Mo.—42

tions, demonstrates that the mere charge of an assault upon a woman or child sometimes injects such prejudice into the minds of the jury as to compel defendant to prove his innocence beyond a reasonable doubt, and makes it necessary that officers should conduct such prosecutions with scrupulous fairness.

5. ——: ——: **Other Disconnected Acts.** The offer of evidence of an assault upon another little girl in the school of the defendant, who is charged with carnally knowing an eleven-year-old pupil wholly disconnected from said charge, was not only improper, but, in this case, the mere offer was prejudicial.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw,* Judge.

REVERSED AND REMANDED.

*Glen L. Bruner* for appellant.

(1) The verdict of the jury was against the evidence and should be set aside. Under the evidence the verdict indicated that the jury were actuated by bias and prejudice against defendant. (2) The court erred in not sustaining defendant's objections to the testimony of Dr. Stone, who examined the defendant and testified as to his findings. State v. Newcomb, 220 Mo. 65; Constitution, art. 2, sec. 23. (3) The verdict is against the evidence and against the weight of the evidence. Johnson v. State, 17 Ohio, 593; Hornbeck v. State, 35 Oh. St. 277; Higgins v. People, 58 N. Y. 377; State v. Shettleworth, 18 Minn. 208; State v. Knoff, 45 N. H. 148; State v. DeWolf, 8 Conn. 93; 4 Blackstone, 213; Topalanck v. State, 40 Tex. 160; State v. Patrick, 107 Mo. 147.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The trial court's rulings on evidence are in accordance with prior rulings of this court. There is only one exception that is worthy of note, in which appellant's counsel undertake to show that the Cason

family had made threats against appellant. The court ruled that such threats were not admissible, for the reason that said threats were not brought home to Callie Cason. We think this ruling proper. While it may be shown in defense the prosecutrix's ill-feeling toward appellant, yet, in this case no such proof was offered. (2) The sufficiency of the evidence was for the jury. When there is substantial evidence to support the verdict, this court will not convert itself into a trier of the facts. State v. McCullough, 171 Mo. 574; State v. McGuire, 193 Mo. 227; State v. Williams, 199 Mo. 137; State v. Matthews, 202 Mo. 147. (3) Appellant cannot complain of the physical examination made of him by the physician. There is ample evidence in the record showing that he consented to such examination. Attorneys for appellant undertake to make the point that he was not then represented by counsel, but there is nothing in the record showing that he requested counsel, except one time at the jail, and the witness who had charge of him stated that the only reason they did not then stop to let appellant's counsel confer with him was because of the mob, and the fact that appellant was in danger of being taken from them and subjected to violent treatment.

BROWN, P. J.—Tried in the criminal court of Jackson county, defendant was convicted of rape, and appeals from a judgment of that court sentencing him to a term of twenty-five years in the State penitentiary.

**Rape.**

Defendant (colored) was a school teacher in Kansas City, Missouri, and was charged with ravishing Callie Cason, one of his pupils, of the age of eleven years.

The testimony of the prosecutrix is to the effect that when school adjourned for the noon hour on May

**The Facts.** 25, 1911, the defendant requested her to remain and pour some water on his hands; that, after the other pupils had left the building, defendant locked the doors, placed her on a table and ravished her. She says that while defendant was making the assault she threatened to tell her father and mother; whereupon defendant promised to give her a nickel if she did not tell on him. She testified quite positively that defendant confined her in the school room all afternoon. Upon further examination she stated that while the assault was being committed four or five little girl-pupils returned and "peeped in" through the windows of the school house; that defendant saw these pupils, discontinued the assault and let the little girls into the school room; whereupon the defendant and all the pupils gathered at the home of Mrs. Dulin, a neighbor, to play upon a piano and practice singing for the closing exercises of school.

The crime, if committed by defendant, was committed on Thursday, May 25, 1911. Prosecutrix attended school on the following day (Friday), but did not inform anyone of the assault until about ten days later. On Thursday of the following week prosecutrix went to Kansas City, Kansas, to visit Mrs. Bell, a married sister, where she remained until the following Saturday evening. Prosecutrix further testified that she did not inform her sister of the assault while on this visit, but the sister (Mrs. Bell) testified that the prosecutrix did inform her of the crime while at her home. That she (Mrs. Bell) went home with prosecutrix Saturday evening intending to inform her mother of what had occurred. She says that she forgot to tell her mother until about eleven o'clock the next day (Sunday).

The mother of prosecutrix testifies that after being informed of the crime she called upon prosecutrix for an explanation; that prosecutrix "began to cry, and I asked her what she was crying for. She said:.

State v. Horton.

'Mamma, If I tell you what is the trouble will you whip me?' I said: 'I won't if you tell me.' " Prosecutrix then informed her mother that she had been ravished by defendant. A physician was promptly called who made an examination of the prosecutrix and found that her hymen was torn and lacerated, and that she was suffering from gonorrhea.

Two of the little girls who prosecutrix testified had "peeped in" to the school house at the time of the alleged assault, were called by the State. One of them testifies that, when she reached the school house, just after lunch, neither the defendant nor prosecutrix were there; that they had gone up to Mrs. Dulin's to practice on the piano. The other girl testified that defendant and prosecutrix were standing inside the school house when she arrived there. That she saw no assault committed, but that the dress of the prosecutrix "was wrinkled."

After his arrest defendant was examined by two physicians at the request of a police captain. These physicians found that defendant was suffering from gonorrhea, apparently a very recent infection of that disease.

Prosecutrix further testified that defendant had whipped her while she was a pupil at his school, but she could not remember how many times, or why the whippings were administered.

Defendant denied the charge. His testimony is to the effect that when he dismissed his pupils at noon on May 25, 1911, he accompanied a little seven-year-old pupil to the home of her aunt, a Mrs. Edwards, about two blocks from the school house, eating his lunch as he walked along the street. That it was his custom to accompany this seven-year-old pupil home to prevent the older pupils from fighting or abusing her; that from Mrs. Edward's house he went to the home of Mrs. Dulin, a short distance from the school house. Mrs. Dulin is also colored and owned her own home

and a piano. By her permission, and at defendant's request, his pupils assembled there to play upon her piano and to practice some songs which he intended should be sung at the close of school.

Mrs. Edwards and Mrs. Dulin corroborate defendant's testimony regarding his visit to their homes on the day of the alleged assault. Mrs. Dulin testifies that defendant arrived at her home about ten minutes after noon on May 25, 1911, while she and her husband were eating lunch; that his pupils came in as soon as they had time to go home for lunch. She and several other witnesses testified that prosecutrix came to Mrs. Dulin's on May 25, and joined in the noon-hour singing practice.

A colored man named Thomas (a teamster) testified that he arrived at the school house precisely at noon on May 25, 1911, and went into the building to use the telephone; that school had been dismissed, and that there was no one in the building at that time; that a few minutes later he went to Mrs. Dulin's and saw defendant and prosecutrix there.

Defendant testified that the mother of prosecutrix was angry with him because he had whipped her children, and because he was, in some way, connected with some charity contributions which the mayor had sent to him for distribution on the preceding Christmas. That she had said he should not teach that school another term.

Three witnesses testified to the good reputation of defendant prior to the time he was arrested on the present charge. One of these witnesses admitted that he had been convicted and confined in jail. This conviction took place several years before the trial of defendant. None of the character witnesses seemed to be intimately acquainted with defendant.

Such further evidence and facts as will be necessary to a full understanding of the case will be recited in our opinion.

## OPINION.

I. Defendant complains of the trial court's instruction on the subject of *alibi*, but as this alleged error is not recited in defendant's motion for new trial, it is not before us for review. [State v. Conway, 241 Mo. 271.]

No Assignment in Motion.

II. Defendant insists that the physicians who examined him while he was in custody should not have been allowed to testify to the fact that he was suffering from a venereal disease. To meet this insistence the State contends that the examination complained of was made with defendant's consent. We have read the record carefully and find that the "consent" consisted of the failure of defendant to object to the physical examination.

Physical Examination of Defendant.

When a man is under arrest, without counsel, and, speaking metaphorically, is standing in the shadow of a policeman's club, it requires something much more substantial than silence to justify an invasion of his constitutional right not to be compelled to furnish evidence against himself.

If the evidence of the physicians had been objected to on the ground that the physical examination which they made under the orders of a police captain amounted to compelling him to testify against himself, as prohibited by section 23, article 2, of the Constitution of Missouri, then the admission of their evidence would undoubtedly have constituted reversible error. [State v. Newcomb, 220 Mo. 54, l. c. 65.] However, instead of objecting to this evidence on proper grounds, defendant merely objected because the physical examination took place after the preliminary examination before the committing magistrate. Such an objection was wholly insufficient to call the trial court's attention to the incompetency of this evidence.

Therefore, this assignment must also be ruled against defendant. [State v. Crone, 209 Mo. 1. c. 330.]

III. A third contention of defendant is that the trial court erred in refusing to allow him
Threats by Prosecutrix's Mother. to prove that Mrs. Lutie Cason, the mother of prosecutrix and a witness for the State, had made threats against him before the alleged assault on her daughter.

When Mrs. Cason was introduced by the State, defendant's attorney asked her if she did not, at the colored church on Christmas Eve, 1910, make threats of personal violence against defendant. She denied making any such threats, and denied that she had engaged in any quarrel with defendant. Defendant thereafter offered to prove by witness Thomas that Mrs. Cason did make the threats against him as alleged. The evidence of Thomas was objected to on the ground that such threats, if proven, would not establish the fact that prosecutrix was angry with defendant, and the proffered evidence was excluded. This was error. Such cases as State v. Newcomb, 220 Mo. 54; State v. Goodale, 210 Mo. 275; and State v. Brown, 209 Mo. 413, impel us to recognize the fact that in this class of cases where the nominal prosecutrix is a mere child, the person having custody or control of such child is the real prosecutor or prosecutrix, and that charges of this character are sometimes preferred for ulterior purposes. However, under the law it is wholly immaterial who was the prosecutrix in this cause. The defendant had the legal right to bring to the attention of the jury any fact which would show malice or ill-will against him on the part of any witness who testified on behalf of the State, for the purpose of affecting the credibility of such witness and the weight to be given to his or her testimony, first having laid a proper foundation for such evidence.

It is true that some witnesses will tell the whole truth regarding any matter concerning which they are called upon to give evidence, regardless of their friendship for or hatred of the parties to the action, and a witness is competent to give evidence regardless of his feelings towards the parties litigant, but we cannot shut our eyes to the fact that there is still a larger number of people, many of them regarded as truthful and honorable, who, when called as witnesses, will shade or color their evidence by "forgetting" part of the facts and giving exaggerated emphasis to other facts for the purpose of protecting their friends and placing those whom they dislike in a bad light before the court or jury.

In 33 Cyc. 1455, the doctrine is announced that, in prosecutions for rape or assault with intent to commit rape, "defendant may introduce any competent evidence, direct or circumstantial, to show that the charge against him was concocted by the prosecutrix or others. Facts or circumstances which tend to show the motive or bias of any witness who has testified, or the motive of the prosecutrix in making the charge, or to affect her credibility, are admissible; but such evidence is generally confined to bias or motive of one who has testified as a witness." [See, also, 1 Wharton's Criminal Evidence (10 Ed.), sec. 359.]

However, it is not necessary to go outside of our own State for authorities to support the doctrine above announced. In the case of State v. Pruett, 144 Mo. 92, l. c. 94, SHERWOOD, J., speaking for this court, said:

"Error also occurred in refusing defendant permission to ask Crisman whether he had not 'threatened to kill defendant or run him off the place.' This question was clearly competent, since it is always competent to show by such interrogatory that the witness has a bias against or hostile feeling toward a party litigant, and if the witness deny such feeling, etc., he may be contradicted, because it is always important

and all-important to show that the witness does not stand indifferent between the contending parties.''

The case last cited was approved in the case of State v. Darling, 202 Mo. 170. [See, also, State v. Miller, 71 Mo. 590.]

We think the evidence in this cause entitled the State to go to the jury, but the frequency of verdicts of guilty on charges of rape, incest, carnal knowledge and seduction, upon evidence not strong enough to secure convictions on other charges, demonstrates the fact that when a man is charged with an assault upon a woman or child, the charge itself injects more or less prejudice into the minds of the jury, and such prejudice sometimes attains such force as to compel the defendant to prove himself innocent beyond a reasonable doubt, in order to secure an acquittal.

*Prejudice in Rape Cases.*

This being a fact well known, at least to the courts, it is, in the opinion of the writer, necessary that officers should conduct prosecutions of this character with scrupulous fairness and avoid injecting into the minds of the jury any matter which is not proper for their consideration, or which would add to the prejudice which the charge itself has produced in their minds.

In the instant case the State, as a part of its evidence in chief, attempted to introduce proof of an assault upon another pupil who attended defendant's school, but such proof, upon objection, was properly excluded. Whether the offer of evidence of an independent crime wholly disconnected with the charge for which defendant was on trial, and not intended to throw light upon his intent in the present case amounted to reversible error, we need not now decide, but we are satisfied that said evidence was not only improper but the mere offer of such evidence tended to prejudice the jury.

*Other Disconnected Acts.*

As the judgment must be reversed the prosecuting attorney should prefer a separate information

against defendant for each crime he may have committed, if in fact he has committed other crimes, and give him a separate trial for each offense. It is not permissible in this State to try persons for crimes not pleaded in the indictment. [Art. 2, sec. 22, Constitution of Missouri; State v. Teeter, 239 Mo. 475, l. c. 485; 1 Wharton's Criminal Evidence (10 Ed.), secs. 29 and 30.]

At section 29a the same author says: "While the law regards as relevant all facts touching the credibility of the accused, or that can aid a jury to determine the weight of testimony; and while the question of relevancy must rest largely in the discretion of the trial judge, to be exercised by him with regard to the particular facts of each case, there is a marked distinction drawn between such facts and those sought to be brought out that merely tend to degrade the accused, or, by innuendo, to place irrelevant testimony before the jury. Such questions . . . as: 'Have you not been arrested for felony?'—where not propounded in good faith, or asked concerning facts that in themselves are irrelevant, constitute reversible error, entitling the accused to a new trial. And this is true even though such questions are objected to at the time on the ground of irrelevancy, and the answer excluded by the court. The reason is, the irrelevant facts have been placed before the jury by innuendo, the sinister influence remains, nor is it destroyed by the exclusion. It rationally follows, therefore, that the jury has been prejudiced against the accused as fully as though the irrelevant facts themselves had been admitted, and nothing that the court can say entirely obliterates the effect."

For the error of the trial court in excluding evidence of threats made by the mother of prosecutrix against the defendant, as before recited, its judgment is reversed, and the cause remanded for a new trial.

*Walker* and *Faris, JJ.,* concur.