PEOPLE *v.* CORDER.

1. RAPE—CRIMINAL LAW—EVIDENCE.

> In a prosecution for statutory rape upon a seven-year-old girl, testimony by a physician as to the statement made to him by her when he examined her a week after the occurrence of the alleged offense is not admissible for the purpose of corroborating the statements made by her in court.

2. SAME—COMPLAINT OF VICTIM MAY BE SHOWN BUT REPETITIONS INADMISSIBLE.

> The fact that a child of tender years complains of sexual abuse may be shown, but repetitions of the complaint are wholly inadmissible.

3. SAME—STATEMENT MADE TO MOTHER SEVERAL DAYS LATER NOT PART OF RES GESTÆ—NOT ADMISSIBLE IN CORROBORATION OF VICTIM.

> Complaint of sexual abuse made by a girl of tender years to her mother several days after the occurrence of the alleged offense was too remote to be a part of the *res gestæ,* and, there being no claim of coercion or threats excusing the delay, testimony by the mother detailing the statement made by the child with reference to the alleged offense was inadmissible in corroboration of the child, or for any other purpose.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—ACCUSED MAY NOT BE COMPELLED TO SUBMIT TO PHYSICAL EXAMINATION.

> Under the Constitution (Art. 2, § 16), an accused may not be compelled to submit to a physical examination for the purpose of furnishing evidence against himself.

5. RAPE—CONSTITUTIONAL LAW—FURNISHING EVIDENCE AGAINST ONESELF.

> A physical examination of one charged with statutory rape to determine whether he is afflicted with gonorrhea may not be made while he is in custody unless he consent thereto, and, in order to constitute the result of such examination lawful evidence against him, it is necessary to show that he volun-

As to admissibility of incriminating evidence furnished by defendant acting under compulsion, see annotation in 32 L. R. A. (N. S.) 772; L. R. A. 1918B 849; 2 A. L. R. 1332; 22 A. L. R. 1189.

tarily exposed his person, or, at least, was willing to be examined; it not being enough to show that he failed to protest or resist.

FEAD, C. J., and NORTH and SHARPE, JJ., dissenting.

Error to Montcalm; Hawley (Royal A.), J. Submitted June 14, 1928. (Docket No. 120, Calendar No. 33,593.) Decided October 1, 1928.

Lynn Corder was convicted of statutory rape, and sentenced to imprisonment for life in the State prison at Jackson. Reversed.

*Charles H. Goggin* and *Penny & Worcester,* for appellant.

*Wilber M. Brucker,* Attorney General, and *D. Hale Brake,* Prosecuting Attorney, for the people.

FEAD, C. J. *(dissenting).* Defendant was convicted of statutory rape, committed August 9 or 10, 1927, upon his niece, Norma Wilson, 7 years old. On August 17th, she was examined by a physician, Dr. M. S. Hubbard, and found to have gonorrhea. Defendant was arrested August 18th and remained in jail until about noon August 19th. An hour before his release, a relative called at the jail and told him that bail had been arranged and he would be released in about an hour. A half hour later, a physician, Doctor Lilly, appeared at the jail and examined defendant, and testified on the examination and trial that he had gonorrhea. Defendant claims that this examination was an invasion of his constitutional rights in that it compelled him to be a witness against himself.

Defendant's version of the incident was that Robert Fries, the deputy sheriff then in charge of

the jail, called him from the cell block into the corridor, introduced him to Doctor Lilly and said: "Come for an examination;" Fries then went to the other end of the corridor, 10 or 12 feet away, and said and did nothing more; Doctor Lilly said: "I came here for an examination" or the equivalent; defendant exposed himself and the examination was made. There is nothing in the record to indicate fear, or reason for fear, threat, compulsion, promise or other inducement than as above stated. Before the trial, defendant made a motion to suppress the testimony of Doctor Lilly, and in the supporting affidavit made no statement of fact that his consent to the examination had not been free. The motion was overruled on the ground that the examination had been voluntary. Upon the trial, defendant's counsel objected to the testimony of Doctor Lilly, on the constitutional ground urged, and defendant was asked several questions (which were objected to and the objections sustained), the purport of which was whether he had wanted the examination, whether he knew it could not be had without his consent, why he did not object, whether he knew the purpose of it and the use that would be made of it, and why he submitted.

In the charge, the court instructed the jury that the means and methods of the examination were not for their consideration, and that they should not reject the doctor's testimony unless they found it to be false. Defendant, in his testimony, denied having gonorrhea, but produced no medical witnesses.

1. "No person shall be compelled in any criminal case to be a witness against himself, nor be de-

prived of life, liberty or property, without due process of law.'' Const. art. 2, § 16.

Whether such an examination as defendant had, if compulsory, would be a violation of this constitutional provision is in conflict, numerous authorities condemning it and numerous others holding that the prohibition extends only to oral testimony. 2 A. L. R. 1327, note; 28 L. R. A. 699, note; 32 L. R. A. (N. S.) 772, note; L. R. A. 1918B, 844, note; 16 C. J. p. 566.

However, this discussion will be confined to whether defendant's submission was voluntary. Upon this phase, the authorities on physical examination are not abundant, but the analogous law of confessions has settled the principles.

The constitutional right against self incrimination ''doubtless had its birth in the abhorrence with which confessions coerced by inquisitorial torture were regarded alike in England and America.'' 8 R. C. L. p. 78. The history, as well as the language, of the constitutional provision contemplates an application of external pressure or inducement to render a confession involuntary.

''The influence (of hope) which will exclude the confession must be external, and not the mere operation of the accused person's own mind.'' 1 R. C. L. p. 554.

See, also, 18 L. R. A. (N. S.) 825, note.

''The fear must have been caused by outside pressure brought to bear upon the accused and not by his own imagination.'' 1 R. C. L. p. 557.

See, also, 18 L. R. A. (N. S.) 830, note.

''It is accurate enough to say that any confession not obtained by putting the accused in hope or fear

is admissible or voluntary." 18 L. R. A. (N. S.) 811, note.

The word "compel" implies force or violence and has in it the element of irresistibility. 12 C. J. p. 223.

In *People* v. *Collins,* 223 Mich. 303, this court said:

"Unless some form of pressure or coercion is used the defendant's constitutional right would not be invaded."

And quoted with approval:

"Compulsion is the keynote of the prohibition; and to render evidence inadmissible on the ground that defendant was compelled to produce it against himself, it must appear that such compulsion was used to rob him of volition in the matter." 16 C. J. p. 566.

A multitude of other cases are cited in the exhaustive note in 18 L. R. A. (N. S.) 768–874, to which attention is called. It is clear that the compulsion contemplated by the Constitution does not refer to hope or fear brewed in the secret places of a person's mind, but to external forces inducing such hope or fear. An abnormal mental condition not so induced may affect the weight to be given a confession but does not affect its admissibility. 18 L. R. A. (N. S.) 789.

In this case, the record gives no intimation of such external forces except the bare facts that defendant was in jail and the keeper called him out for the examination. There was no evidence that defendant was timid, no showing of discipline in the jail which would tend to overawe him, nor indication of stern command or veiled threat. Was there sufficient external pressure to render his submission involuntary?

The most extreme position in any of the authorities consulted is found in a *dictum* in *State* v. *Horton,* 247 Mo. 657, 663 (153 S. W. 1051). I have not found an authority which approves this as a rule of law.

"When a man is under arrest, without counsel, and speaking metaphorically, is standing in the shadow of a policeman's club, it requires something much more substantial than silence to justify an invasion of his constitutional right not to be compelled to furnish evidence against himself."

Being only *dictum,* this declaration did not overrule *State* v. *Jones,* 153 Mo. 457 (55 S. W. 80). There the sheriff asked the prisoner to pull off his clothing so he could be examined for a bite on the leg. The sheriff's voice containing no tonal threat, the court held the submission voluntary.

In *State* v. *Struble,* 71 Iowa, 11 (32 N. W. 1), an examination in jail was held voluntary although the sheriff accompanied the physician, it not appearing that the sheriff said or did anything with respect to it or that defendant was compelled to submit.

In *State* v. *Miller,* 71 N. J. Law, 527 (60 Atl. 202), the county physician had the defendant removed to the upper part of the jail and divested of his clothes, but discovered only superficial wounds on the hands. The court held the submission voluntary because there was nothing to indicate that defendant objected to the removal of his clothing or the examination of his person.

In *Angeloff* v. *State,* 91 Ohio St. 361, 363 (110 N. E. 936), it was said:

"Where a defendant while confined in jail submits without objection to a physical examination of his

person, with knowledge that such examination is for the purpose of proving or disproving his guilt of the crime charged, evidence of the result of such examination may be admitted in evidence upon the trial.''

In *People* v. *Glover*, 71 Mich. 303, the defendant, in jail, was notified by the physicians that they made the examination by direction of the prosecuting attorney and he submitted voluntarily and without objection. The testimony was held competent. In this case, the original record recited that defendant ''submitted to such examination voluntarily, and made no objection thereto.'' No further facts were stated, but those set up indicate that the examination was held to have been voluntary because no objection was made.

In *People* v. *Collins, supra*, asking a defendant, who was in custody, to put his hands on the marks on the throat of deceased, for whose killing he had been arrested, was held not a violation of his constitutional right.

In *People* v. *Sharac*, 209 Mich. 249, this court said that the mere fact the defendant was under arrest did not constitute such duress as to exclude the testimony of his confession.

A confession is not involuntary because it is elicited by questions of officers (18 L. R. A. [N. S.] 794), and while defendant is under personal restraint (18 L. R. A. [N. S.] 795).

The constitutional right is personal and is waived by failure to claim it. When a witness is asked an incriminating question, the evidence is competent unless he makes objection. *People* v. *Arnold*, 40 Mich. 710; 4 L. R. A. (N. S.) 1144, note.

''The fact that a witness may be ignorant of his privilege, and that he is not advised of it, seems gen-

erally not to be considered important, since it is said everyone must be deemed to know the law." 28 R. C. L. pp. 431, 432.

Both on the motion to suppress Doctor Lilly's testimony (which motion was neither necessary nor conclusive) and at the trial defendant had opportunities to state the facts. He disclosed none which indicated compulsion. In sustaining the objection to the excluded testimony, the court said:

"If he said anything, that may be stated, but his undisclosed intention or idea is immaterial."

No suggestion was made to the court that the questions contemplated any other disclosure than defendant's mental attitude. No offer was made to show any condition which would hint at external influence. Upon defendant's statement of facts, the situation was that, knowing he was to be released in a half hour, and being of normal intelligence, he assisted in the examination without hesitation or objection. What more is necessary to make it "affirmatively appear that he consented thereto"?

The constitutional right against self incrimination must be jealously guarded, but it was not violated at bar, either in admission of the testimony of the result of the examination of defendant or in exclusion of a showing of defendant's state of mind.

2. Norma Wilson's mother and Doctor Hubbard testified to statements made by Norma seven and eight days, respectively, after the assault, naming defendant as her assailant. The mother discovered the girl's condition, questioned her and took her to the doctor, who also made inquiry. Defendant concedes that showing the fact of complaint was proper, but contends the details were incompetent because of lapse of time, there having been no proof of

threats or fear to bring the case within *People* v. *Gage*, 62 Mich. 271 (4 Am. St. Rep. 854); *People* v. *Glover, supra;* and *People* v. *Hicks*, 98 Mich. 86.

This court recognizes an exception to the general rule regarding complaints, applying in cases of assaults upon young girls. *People* v. *Marrs*, 125 Mich. 376; *People* v. *Black*, 231 Mich. 48. The exception is explained in *People* v. *Hicks, supra:*

"But exceptional cases have arisen, when rape was charged, where third parties have been allowed to detail conversations with the prosecutrix. In *People* v. *Gage*, 62 Mich. 271, this was allowed. It was not permitted upon the ground that the complaint of the prosecutrix was a part of the *res gestæ*, but as corroborative of her testimony, and for the reason that the party outraged was of tender years, and that her silence for a length of time was the direct consequence of fears of chastisement, induced by threats of the perpetrator of the wrong. This case goes to the extreme of the rule, and borders closely upon dangerous ground."

While there were no threats in this case to induce silence, the extremely tender age of the girl, with her lack of appreciation of the situation, the fact her assailant was her uncle and that he told her not to tell any one of the affair, furnished exceptional circumstances as potent to prevent complaint as would have been threats from a stranger or fear of chastisement. Delay in making complaint, if explained, merely goes to the weight of the evidence and does not render testimony of complaint inadmissible. *People* v. *Black, supra.*

The witnesses gave no details of the statement made to them by Norma, except that defendant had had connection with her. The delay did not make the testimony incompetent.

The testimony as to the person to whom complaint was first made was in conflict. Norma said she first told the story to Doctor Hubbard. Mrs. Wilson testified that before they went to Doctor Hubbard's office she had merely asked Norma whether "she had had anything to do with any boys," and that Norma had named defendant. Not until the conversation with the doctor, which was in the presence of the mother, was the real character of the claimed assault stated by Norma. The testimony of both Mrs. Wilson and Doctor Hubbard was competent to show complaint.

Doctor Hubbard's testimony was admissible on at least one other ground. Before he took the stand, counsel for defendant, on cross-examination of Mrs. Wilson, had injected into the record the intimation, and on cross-examination of Norma, had obtained her statement, that Doctor Hubbard had suggested defendant as Norma's assailant. The people were entitled to rebut that testimony.

3. Norma had been sent to the University State hospital for examination. The information, when filed, contained in the list of witnesses the notation "physician of the University State hospital." Before trial the prosecutor moved to indorse on the information the name of Dr. S. E. Andrews as the witness described. He stated, not under oath, that he did not know, until the Saturday before, the name of the physician who had examined Norma. Indorsement of the name was within the sound discretion of the court (*People* v. *Tamosaitis, ante*, 258), and there was no abuse of discretion in this instance.

The other claims of error presented by defendant have been given due consideration and are not well grounded.

The conviction should be affirmed.

NORTH and SHARPE, JJ., concurred with FEAD, C. J.

WIEST, J. The conviction should be set aside and a new trial ordered.

The court was in error in permitting Dr. Hubbard to testify to the statement made to him by the little girl, when brought to his office by her mother, several days after the alleged offense. Such repetition of the accusation, previously made to the mother, was improper and should not have been permitted to serve as corroborative of the statements made by the girl in court. That such purpose was permitted appears from the following instruction to the jury:

"The testimony that Dr. Hubbard gave here likewise is merely corroborative. The testimony of both of those witnesses is corroborative in two respects, if true, and particularly as far as it tends to corroborate the story the girl told upon the stand, as to the truth of her claim."

If such be declared the rule then a child may, by statements to many persons, be corroborated in court by each merely telling in court what the child said to them out of court. No such rule prevails.

The fact that a child of tender years complains of sexual abuse may be shown, but repetitions of the complaint are wholly inadmissible. The first complaint by the girl was made to her mother. The offense was alleged to have been committed on August 10th, complaint to the mother was not made until several days later and, therefore, was too remote to be a part of the *res gestæ*. *People* v. *Tobin*, 230 Mich. 214. There was no claim of coercion or threats operating to delay complaint and the hold-

ing in *People* v. *Gage,* 62 Mich. 271 (4 Am. St. Rep. 854), does not apply. Because of the unexcused delay in making complaint even the mother could not, in corroboration of the child, or for any other purpose, detail the statement made by the child with reference to the alleged offense. *People* v. *Hicks,* 98 Mich. 86; *People* v. *Place,* 226 Mich. 212; *People* v. *Tobin, supra.*

The court was also in error in receiving the testimony of the physician who examined defendant at the jail and in submitting such testimony to the jury. The circumstances surrounding such examination were in dispute and the result of the examination was not admissible unless defendant voluntarily submitted his person to examination. The jury should not have been permitted to consider the result of the examination unless it was found by the jury to have been a voluntary submission by defendant. Defendant was not permitted to explain why he submitted. The court instructed the jury:

"Now, the local doctor, Dr. Lilly, has testified about that examination and to the extent that he found the disease to exist in the respondent. His testimony would be corroborative to an extent, if true, of the testimony of the girl.

"It can be used for that purpose only and for no other. Some criticism has been based upon the means and methods by which this examination was had. That is not for your consideration at all. That is a matter to be passed upon by the court and it was passed upon by the court. The testimony was admitted. It is for your consideration and you have no right to reject it unless you find it to be false."

All authority holds that an accused may not be *compelled* to submit to such an examination as was

had in this case. This is because Art. 2, § 16, of the Constitution of this State provides:

"No person shall be compelled in any criminal case to be a witness against himself." * * *

An accused may, of course, consent and furnish evidence against himself but, unless he consents, the examination of his person cannot be made. Consent cannot be predicated upon failure to protest or resist. Ignorance of right to resist, fear under the distress of arrest and confinement, may lead a prisoner to be passive, or even to comply with a request to exhibit his person to medical examination, without loss of the protective provision in the Constitution. It was not enough to show that defendant was a docile prisoner and failed to protest or resist. To constitute the result of the examination lawful evidence it was necessary to show that he voluntarily exposed his person, or, at least, was willing to be examined. No court in this State would assume power to order such an examination. It was ordered by a magistrate in England and the magistrate and doctor were later cast in damages for an assault. We quote the syllabus:

"A magistrate has no right to order an examination of the person of a prisoner. An examination by medical men, in pursuance of such an order, of the person of a female, in custody upon the charge of concealing the birth of her illegitimate child constitutes an assault." *Agnew* v. *Jobson*, 13 Cox's Cr. Cas. 625.

That was a holding at circuit but well states the common law. See *Union Pacific R. Co.* v. *Botsford,* 141 U. S. 250 (11 Sup. Ct. 1000).

In the case at bar a mere ministerial officer called in a physician and assumed to exercise a power no

court could extend to him, and, because the prisoner submitted without protest or.resistance, it seems to be thought that he volunteered to disclose evidence· against himself.  If an examination of an accused extends to his private parts the result thereof cannot be received in evidence unless it affirmatively appears that he consented thereto.

In *Union Pacific R. Co.* v. *Botsford, supra,* we find this:

"As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity: to be let alone.'  Cooley on Torts, 29."

Defendant was not let alone but brought from his cell by his jailer to be subjected to medical examination in an effort to discover evidence tending to establish his guilt.  Defendant was about to be released on bail and it was evidently considered that if the examination was had it would have to be made while he was in custody.

Our attention is directed to the holding in *People* v. *Glover,* 71 Mich. 303, as authority for the examination.  The protection of an accused against being required to furnish evidence against himself was not presented in the *Glover Case* or there considered: The court merely held that the relation of physician and patient did not obtain, and, therefore, the testimony of the physician did not fall within the rule of a privileged communication.  This is made plain by the opinion.  The brief in behalf of defendant in the *Glover Case* urged that the physicians who made the examination "became his physicians, and the relation of physician and patient became established," and "the result of that examination was privileged."  Duress was also claimed.  The *Glover Case* is not authority upon the question before us.

It cannot be said, under defendant's testimony, that he voluntarily submitted to an examination of his person. At most he involuntarily submitted. Submission alone establishes no waiver. Voluntary submission may, but involuntary submission, never. Defendant was not permitted to tell why he submitted. He should have been allowed to do so even though contradicted by his action and words.

Cases in the books involving the charge of rape, and venereal disease of the victim, with one exception, disclose no instance where a court of last resort, in jurisdictions having a constitution containing a provision like ours, sanctioned an examination of the privates of an accused without his consent. *Angeloff* v. *State,* 91 Ohio St. 361 (110 N. E. 936), is the exception, and there the decision was based upon a submission, without objection and with knowledge of the purpose. That case is not satisfactory, contains no reasoning, mentions no constitutional provision, states no ground of objection urged or considered, and does not disclose any of the circumstances showing the asserted submission.

We now turn to cases directly in point. In *State* v. *Newcomb,* 220 Mo. 54 (119 S. W. 405), the charge was rape and a physical examination of the accused, while in custody, was ordered by a magistrate. The court held that the examination was a violation of the protection afforded by the constitution. It was also said by the court:

"Some effort was made to show that defendant voluntarily consented to this violation of his person, but we think it is apparent that he simply submitted because he thought he was compelled to do so. When it is considered that he was at the time in custody for this very crime; that the prosecuting attorney demanded an order from the justice for this exami-

nation; that the sheriff took him into a private room for the purpose of the examination, it is not strange that the defendant thought he was compelled to submit. It is idle to talk of his having voluntarily consented to this violation of his person. As we read the record, he had no option in the matter.''

The point was again considered in *State* v. *Horton,* 247 Mo. 657 (153 S. W. 1051). We quote:

''Defendant insists that the physicians 'who examined him while he was in custody should not have been allowed to testify to the fact that he was suffering from a venereal disease. To meet this insistence the State contends that the examination complained of was made with defendant's consent. We have read the record carefully and find that the 'consent' consisted of the failure of defendant to object to the physical examination.

''When a man is under arrest, without counsel, and, speaking metaphorically, is standing in the shadow of a policeman's club, it requires something much more substantial than silence to justify an invasion of his constitutional right not to be compelled to furnish evidence against himself.''

In *State* v. *Matsinger* (Mo.), 180 S. W. 856, the charge was assault with intent to rape. The prosecuting attorney sent physicians to examine the accused to discover if he was afflicted with a venereal disease. The accused was not apprised of his right to resist the examination and was merely silent, when informed that the physicians were there to make it, instead of positively consenting thereto. Again the court held the evidence obtained under such an examination was inadmissible. See, also, *State* v. *Height,* 117 Iowa, 650 (91 N. W. 935, 94 Am. St. Rep. 323); *People* v. *Akens,* 25 Cal. App. 373 (143 Pac. 795); *People* v. *McCoy,* 45 How. Pr. Rep. (N. Y.) 216; Voorhees on Arrest (2d Ed.), § 212.

We have decided to follow the holdings in cases involving rape and not the cases merely involving measuring of the foot of an accused, exhibiting a wound on the arm or tattoo marks, scars on the face or portions of the body usually exposed, requiring' a prisoner to stand up, and like cases.

For the reasons stated the conviction is set aside, a new trial granted, and defendant remanded to the proper custody.

FELLOWS and CLARK, JJ., concurred with WIEST, J. McDONALD, J., concurred in the result. POTTER, J., did not sit.