PEOPLE v. WOODWARD

1. INDICTMENT AND INFORMATION—WITNESSES—INDORSEMENT—DUTY TO PRODUCE.

Indorsement on an information of one who is not a *res gestae* witness requires the prosecution to obtain that witness' presence in court and the defendant is entitled to rely upon the prosecutor's duty to produce that indorsed witness.

2. INDICTMENT AND INFORMATION — WITNESSES — INDORSEMENT — TRIAL — PRESENCE OF WITNESS — DUE DILIGENCE.

A prosecutor may be excused from producing one, not a *res gestae* witness, whose name was indorsed on an information if he makes a showing of due diligence in attempting to obtain court attendance of the witness.

3. INDICTMENT AND INFORMATION—WITNESSES—INDORSEMENT—DUTY TO PRODUCE—FAILURE.

Failure to produce at defendant's trial three police officers indorsed as witnesses on the information was reversible error where the prosecutor failed to give any reason why one officer was not present, failed to show that a second officer, although on furlough, was not available to testify, and explained the nonpresence of a third officer on the ground that his testimony was merely cumulative, such explanation not being a satisfactory showing of due diligence in obtaining the witness's court attendance (MCLA § 767.40).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[1, 2, 4] 58 Am Jur, Witnesses § 3.
[3] 39 Am Jur, New Trial § 32.
[5] 58 Am Jur, Witnesses § 3.
[6] 48 Am Jur, Sodomy § 5.

4. Indictment and Information — Witnesses — Indorsement — Duty to Produce.

Prosecutor had a duty to produce three police officers, indorsed as witnesses on the information, for cross-examination at defendant's trial, or to make a proper showing of why those officers were, or could not be, produced, where the defendant had expressly said that he could not waive any indorsed witness (MCLA § 767.40).

5. Indictment and Information — Witnesses — Indorsement — Duty to Produce—Waiver.

An accused is not required to request production of indorsed witnesses and his failure to do so is not a waiver of their production, since a prosecutor has the duty to produce and to give an accused the opportunity to examine all indorsed witnesses, including those who are not *res gestae* witnesses.

6. Sodomy—Evidence—Witnesses—Res Gestae—Admissibility.

Policewoman's testimony relating the details of a six-year-old sodomy victim's complaint was admissible as part of the *res gestae* where the victim's statements were made under the continuing excitement and effect of his emotional experience, and the victim's age as well as the nature of the crime charged all but eliminated the possibility of youthful fabrication.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 December 10, 1969, at Detroit. (Docket No. 6,533.) Decided February 5, 1970.

Raymond Woodward was convicted of sodomy. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Carl Levin,* for defendant on appeal.

Before: Lesinski, C. J., and Bronson and Danhof, JJ.

Lesinski, C. J. On August 21, 1968 defendant Raymond Woodward was convicted of sodomy.[1]

The police were summoned to 3514 Fourth Street by Harry Daher who reported hearing a "moaning" coming from a passageway alongside his home and seeing a "man on his knees bending forward" over a child. According to the testimony of the two responding officers, defendant was observed straddling the complainant and "possibly" moving his buttocks. The officers further testified that upon announcing their presence, defendant jumped up, with his trousers on, and attempted to run. He was tackled and placed under arrest.

The complainant was conveyed to Detroit General Hospital where he was treated for anal lacerations. While at the hospital, the complainant was interviewed by two policewomen. At trial the complainant, a six-year-old boy, *could not recall* any of the details of the crime, but *one* of the policewomen testified, over objection, as to the *details* of the complainant's statement in the hospital.

At the conclusion of the prosecution's presentation, the following colloquy took place:

*"The Court:* Do you have any other witnesses?

*"Mr. Keenan:* * * * There is one other witness that was endorsed on the information, Patrolman Artmore whose testimony is merely cumulative, will not add any new evidence.

*"The Court:* Do you waive Patrolman Artmore, Mr. Harper?

*"Mr. Harper:* Your Honor, I do not waive him. It is up to the people whether they feel their case

---

[1] MCLA § 750.158 (Stat Ann 1962 Rev § 28.355).

is sufficient, but I can't possibly waive any witness in this case.

"*The Court:* Mr. Artmore was a partner of who?

"*Mr. Keenan:* He was the partner of a second pair of policemen that arrived at the scene. All he did was assist in taking the defendant to the scout car.

"*The Court:* Very well.

"*Mr. Keenan:* We would like to waive that witness.

"*The Court:* What about Mary Marcantonio?

"*Mr. Keenan:* She was Policewoman Bayer's partner at the time testimony was taken from Robert White.

"*The Court:* What about Mary Forst?

"*Mr. Harper:* I would like to submit with regard to Miss Forst—

"*The Court:* (*Interposing*) Who is Mary Forst?

"*Mr. Harper:* She is the policewoman with whom we have had all our contact in this case prior to the commencement of this trial. I had understood Miss Forst to be the officer in charge and all our communications and discussions have been with Miss Forst.

"*The Court:* Where is Miss Forst?

"*Mr. Keenan:* She is on furlough, your Honor, and I did not know about her furlough status until the day the trial started and Policewoman Eggers is filling in for her in that capacity. There is no testimony she can present to bear on the facts.

"*The Court:* She has no personal knowledge of anything?

"*Mr. Keenan:* No, your Honor, she does not.

"*Mr. Harper:* Very well. May I say, your Honor, we are entitled to benefit of the presumption we might have if the testimony of the other policewoman witness was considered by this Court. If obviously they were to be *res gestae* based upon statements taken from the child complainant, I think it is presumed that any statements that these other parties might have taken would be—

"*The Court:* (*Interposing*) Where is the evidence these other parties took any statements?

"*Mr. Harper:* It is obvious from the point of defense Miss Forst investigated this case, was charged with its investigation which I do not have to take—

"*The Court:* (*Interposing*) Counsel, you have known at least since this information was filed that Miss Forst was endorsed on here as a witness.

"*Mr. Harper:* Indeed.

"*The Court:* You could have subpoenaed her and had her here if you wanted to.

"*Mr. Harper:* I respectfully submit there is no need for the defense to subpoena witnesses endorsed on the information. It is believed by the defense they are endorsed because they are *res gestae* witnesses.

"*The Court:* They are not endorsed necessarily because they are *res gestae* witnesses.

"*Mr. Harper:* I cannot see—

"*The Court:* (*Interposing*) You are entitled to endorsement also of the witnesses whom the prosecution thinks it might call. It must endorse *res gestae* witnesses and it must call *res gestae* witnesses, but it does not have to call all of the witnesses whose names are endorsed on the information.

"*Mr. Harper:* The defense in this instance stands on its right to rely upon the presence of witnesses known to be material to the case if endorsed on the information.

"*The Court:* The only additional witness you propose to call is the doctor.

"*Mr. Keenan:* That is correct.

"*The Court:* You may proceed, Mr. Harper."

It is defendant's contention that the trial court's failure to require production of all of the indorsed[2] witnesses constituted reversible error. Plaintiff's counter argument is based upon two grounds. First,

2 MCLA § 767.40 (Stat Ann 1969 Cum Supp § 28.980).

that only *res gestae* witnesses are required to be indorsed and produced at trial and since the witnesses in question were not *res gestae* witnesses, no error was committed. Second, that the defendant failed to object to the trial court's action and is thereby precluded from complaining on appeal.

We do not find it necessary for resolution of this issue to determine whether the witnesses were *res gestae* witnesses. The rule as to the prosecutor's duty after indorsement was clearly and concisely stated in *People* v. *Kern* (1967), 6 Mich App 406:

"Page was not a *res gestae* witness and therefore the prosecutor was not required to indorse his name on the information. See *People* v. *Davis* (1955), 343 Mich 348. *However, if the prosecutor does indorse the name of such a witness he must secure his presence in court and the defendant is entitled to rely upon the prosecutor's duty to produce him.* See *People* v. *Whittemore* (1925), 230 Mich 435; *People* v. *Lummis* (1932), 260 Mich 170. Nevertheless, the prosecutor may be excused from producing that witness if he makes a showing of due diligence." (Emphasis supplied.)

In this case the prosecutor did not make any showing upon which the trial judge could correctly conclude that the attendance of the witnesses could not be secured. There was no evidence that policewoman Mary Forst, although "on furlough," was not available to testify. The prosecution did state that patrolman Artmore's testimony would be "merely cumulative." Such a statement does not amount to a satisfactory "showing of due diligence." *People* v. *Kern, supra.* Further, the record is barren of any showing as to the reason patrolwoman Mary Marcontonio was not produced. The defendant having expressly indicated he could not waive any indorsed witnesses, it was the prosecutor's duty to

produce the police officers, at least for cross-examination, or to make a proper showing of why they were not or could not be produced at the trial. *People* v. *Kern, supra; People* v. *Barker* (1969), 18 Mich App 544; *People* v. *O'Dell* (1968), 10 Mich App 87.

The plaintiff's second point was answered in *People* v. *O'Dell, supra,* at 94:

"The prosecutor claims that a defendant must request production of indorsed witnesses and his failure to do so will be deemed a waiver of their production. * * * We have already indicated it is, in general, the prosecutor's duty to produce, and give the defendant the opportunity to examine, all indorsed witnesses, even those indorsed witnesses who are not *res gestae* witnesses. * * * Here it is apparent the trial judge decided the prosecutor had satisfactorily explained his nonproduction of Arthur Murry and Maria Grigorian. *It would have been pointless, futile, indeed superfluous, for defendant's counsel thereafter to enter request for their production.*" (Emphasis supplied.)

In the instant case the trial court clearly indicated its conception of the relative law when it said: "You could have subpoenaed her and had her here if you wanted to." Defense counsel attempted to disagree but was cut short by the trial court. We fail to see what further objections or requests would have accomplished.

Defendant's next claim is that the admission of policewoman Bayer's testimony detailing the complainant's hospital statement was reversible error. Defendant argues that the testimony is hearsay and, therefore, admissible, if at all, as corroborative evidence only. Plaintiff argues that the testimony is admissible as direct evidence under the *res gestae* exception to the hearsay rule. It is necessary to

remember that *at trial* the six-year-old complainant was *unable* to recall any of the events of the day in question or to identify the defendant as his assailant. Thus, the testimony of the policewoman that the complainant had stated the defendant "put his peepee in my butt" is of utmost importance.

The common-law allowed testimony establishing the fact of a complaint of a rape or other sexual crime, but refused to permit the *details* of the complaint to be recited.[3] However, Michigan, in the case of *People* v. *Gage* (1886), 62 Mich 271, appeared to create an exception to this rule. In that case the mother of the ten-year-old prosecutrix was permitted to testify, over objection, concerning what the girl told her "relative to the offense [of assault with intent to rape]," when questioned by the mother some three months after the offense. The girl *also testified* stating that the defendant threatened to "give her an awful whipping" if she told her father of the attack. The Court discussed the general common-law rule but affirmed the conviction stating:

"But we think the rule not an inflexible one, and ought to yield where the particular circumstances of the case make it inapplicable; as where the party outraged is of tender years, and her silence is the direct consequence of fears of chastisement induced by threats of the perpetrator of the wrong. The reason of the rule admitting the fact that complaint was made, and excluding the complaint itself, is founded, aside from its being hearsay, by those courts which do not treat it as part of the *res gestae,* upon the danger of allowing a designing female to corroborate her testimony by statements made by herself to third persons, and the difficulty of disproving the principal fact by the accused. But some courts hold that the evidence that complaint was made is not received merely as corroborative of the

---

[3] See annotation, 83 ALR2d 1368.

statement of the prosecutrix, but as part of *res gestae,* where they are made immediately after the outrage complained of, and this is the holding of our own Court: *Lambert* v. *People,* 29 Mich 71; *People v. Brown,* 53 Mich 531.

"If the complaint made immediately after the occurrence constitutes part of the *res gestae,* it would seem that not only the fact that complaint was made, but the complaint made, should be admitted. Besides, the reason upon which the rule of exclusion is based, namely, the difficulty of disproving the accusation, no longer exists in this State, where the accused is permitted to testify in his own behalf. We think in this case there was no error in admitting the testimony of the mother of the child."

From the above quoted language it appears that the statement was admitted as part of the *res gestae.* See, also, *People* v. *Glover* (1888), 71 Mich 303, and *People* v. *Bernor* (1898), 115 Mich 692.

However, in *People* v. *Hicks* (1893), 98 Mich 86, 89, and *People* v. *Duncan* (1895), 104 Mich 460, 464, the Supreme Court took the position that the testimony in *People* v. *Gage, supra,* was admitted not as part of the *res gestae* but, rather, as corroborative of the witness' testimony because the witness was "of tender years" and because "her silence   *   *   * was the direct consequence of fears of chastisement."

Subsequently, in *People* v. *Marrs* (1900), 125 Mich 376, the Supreme Court made the following pronouncement:

"The witnesses were allowed to detail the statements made by the prosecutrix to them in regard to the commission of the offense. It is the well-established rule that the people may show when, where, and to whom the prosecutrix made complaint. The details of her statement are not admissible, except as they are brought out on cross-examination.

\* \* \* If the statements are so intimately connected with the times and place of the crime as to be a part of the *res gestae,* they are then admissible. The only other exception to the rule is in the case where the victim is a girl of tender years. *People* v. *Gage, supra; Hannon* v. *State,* 70 Wis 448 (36 NW 1). The complaint by the prosecutrix in this case was too remote to form a part of the *res gestae.* Neither did she come within the other exception to the rule. She was not of such weak mind as to bring the case without the rule. It was therefore error to permit her father, mother, and sister to state the circumstances of the commission of the crime as detailed to them by her."

If it were not for later Michigan cases, we would hold that Michigan in fact had created two exceptions to the hearsay rule for statements of this nature, despite the language of *People* v. *Gage, supra.* However, in *People* v. *Corder* (1928), 244 Mich 274, the Court divided evenly upon the question of the admissibility of the details of complaints for statutory rape. The complaints were made to the victim's mother and doctor seven and eight days, respectively, after the assault. Three justices cited *People* v. *Hicks,* holding that the testimony was properly admitted as corroborative of the prosecutrix's statement. Three other justices (joined by one additional justice in result only) found that the statement was "too remote to be part of the *res gestae"* and since there was "no claim of coercion or threats operating to delay complaint, \* \* \* the holding in *People* v. *Gage* does not apply." Thus the latter justices took the position that *Gage* stood for the proposition that the statements were admissible if part of the *res gestae* and that the age of the prosecutrix and the amount of coercion went only to the question of contemporaneousness.

Shortly thereafter, however, the Court, in *People* v. *Baker* (1930), 251 Mich 322, noted the split in *People* v. *Corder, supra,* and stated:

"The admissibility of details of complaint, in the case of very young girls, has been permitted on a liberal extension of the *res gestae* doctrine. *People* v. *Gage, supra; People* v. *Brown,* 53 Mich 531. The rule in this State is that where the victim is of tender years the testimony of the details of her complaint may be introduced in corroboration of her evidence, if her statement is shown to have been spontaneous and without indication of manufacture; and delay in making the complaint is excusable so far as it is caused by fear or other equally effective circumstance."

This case, therefore, appears to combine *Gage, Hicks* and *Corder* to create a new rule: admissible as *res gestae* corroborative evidence.

Finally, in *People* v. *Bonneau* (1948), 323 Mich 237, the Court cited *Gage, Glover, Bernor* and *Baker* and held:

"The details of a complaint made shortly after the occurrence of the event are admissible as part of the *res gestae.*

"In the instant case the girl was but seven years of age, frightened by defendant's threats and thereby deterred from telling anyone of the offense. Under such circumstances her statement to her mother, made three days after the event, may be treated as a part of the *res gestae* equally as if made upon first opportunity shortly after occurrence of the offense. The mother's testimony as to details of the girl's statement to her was admissible."

Although this language sounds like a broad *res gestae* rule, the *facts* of the case reveal that the testimony was actually corroborative only.

Since the modern view is towards increasing the admissibility of testimony,[4] we opt to follow the *lead* of *People* v. *Bonneau, supra,* and admit the testimony of policewoman Bayer in the instant case. We do so because we consider the complainant's statement to be part of the *res gestae,* having been made under the continuing excitement and effect of his emotional experience.[5] Once the inherent trustworthiness of this type of statement is recognized the need to limit its admissibility to corroborative use only is obviated. Further, under the facts of this case, the age of the complainant and the nature of the crime charged all but eliminate the possibility of youthful fabrication.

Defendant raises one other issue on appeal. Although not necessary for our decision, it should be discussed to prevent a recurrence on retrial. Upon

[4] See McCormick, Evidence, Ch 35, p 626 for a discussion of the future of the hearsay rule.

[5] The statement made by complainant to policewoman Bayer was made during the continuing investigation of the alleged assault upon the complainant. He was taken from the scene of the alleged assault in the custody of police authority, taken to his home in the presence of police authority from where in the presence of his mother he was taken under police authority to the hospital where he was questioned by policewoman Bayer. If we were to rely on the testimony of Harry Daher, the man who reported the incident to the police, it occurred about noon on April 28, 1968, some 7-1/2 hours before making of the statement. If we rely on the testimony of Patrolman Gary Howell and Officer Teddy S. Proctor, the alleged assault occurred at 6:20 p.m. on April 28, 1968, some 1 hour and 40 minutes before the complainant's statement to policewoman Bayer. In either event under the circumstances of this case the statement is not so remote in time as not to be part of the *res gestae.*

McCormick, *supra,* note 4, p 578, cites the following definition of *res gestae* from the case of *Allen* v. *Mack* (1942), 345 Pa 407, 410 (28 A2d 783, 784):

"A *res gestae* declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties."

cross-examination of the defendant, the following colloquy took place:

"*The Court:* What is that you have in your hand there?

"*Mr. Keenan:* This is the defendant's prior record, your Honor.

"*The Court:* I don't want to see it. How many pages have you got?

"*Mr. Keenan:* Three pages, your Honor."

We cannot conceive of any necessity justifying the trial court's question. Although we express no opinion as to the effect of the question, we trust the desire of the trial judge to prevent the inference of error will prevent recurrence of the incident.

Reversed and remanded for new trial.

All concurred.